**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

INTERNATIONAL REFUGEE ASSISTANCE
PROJECT, INC.,

                              Plaintiff,

             -v-

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                              Defendant.

No. 20 Civ. 4284 (RWL)


**DEFENDANT'S COMBINED MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT**
**MATTER JURISDICTION AND IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**


AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2689
E-mail: danielle.levine@usdoj.gov

DANIELLE J. LEVINE
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.     THE COURT LACKS JURISDICTION OVER THIS ACTION BECAUSE
IRAP'S CLAIM IS MOOT .......................................................................................... 3

     A.     FOIA Does Not Require Two Agencies to Produce Identical, Duplicate
Records Retrieved from the Same Database to the Same Requestor ..................... 3

     B.     Having Elected Not to Name DOS as a Defendant, IRAP Cannot
Challenge DOS's Withholdings in This Forum ................................................... 6

     C.     IRAP Cannot Avoid Mootness by Citing a Purported Pattern and Practice ........... 8

           1.     IRAP Has Not Alleged a FOIA Pattern and Practice Claim ....................... 8

           2.     IRAP Cannot Plausibly Allege a Pattern or Practice Claim ..................... 11

II.     THE COURT SHOULD DENY IRAP'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ............................................................................................................. 14

     A.     The Court Should Not Reach IRAP's Summary Judgment Motion ..................... 15

     B.     IRAP Has Not Met Its Burden to Show No Genuine Dispute That All
"Refugee Case File" Records Maintained in DOS's WRAPS System Are
USCIS Agency Records ................................................................................... 16

     C.     FOIA Does Not Permit IRAP to Seek Declaratory Relief ................................... 21

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 9, 10

*Boyd v. Executive Office for United States Attorneys*,
   87 F. Supp. 3d 58 (D.D.C. 2015) ............................................................................. 4

*Bravado Int'l Grp. Merchandising Services, Inc. v. Ninna, Inc.*,
   655 F. Supp. 2d 177 (E.D.N.Y. 2009) .................................................................... 11

*Brennan Ctr. for Justice at NYU v. U.S. Dep't of Justice*,
   697 F.3d 184 (2d Cir. 2012) ..................................................................................... 4

*Chambers v. TRM Copy Ctr. Corp.*,
   43 F.3d 29 (2d Cir. 1994) ................................................................................... 16, 17

*Competitive Enterprise Inst. v. Office of Science & Tech. Policy*,
   241 F. Supp. 3d 14 (D.D.C. 2017) ...................................................................... 4, 16

*Crooker v. U.S. State Dep't*,
   628 F.2d 9 (D.C. Cir. 1980) ........................................................................... 3, 4, 5, 6

*Forsham v. Harris*,
   445 U.S. 169 (1980) ................................................................................................ 18

*Hunton & Williams LLP v. EPA*,
   248 F. Supp. 3d 220 (D.D.C. 2017) ....................................................................... 21

*Jett v. FBI*,
   139 F. Supp. 3d 352 (D.D.C. 2015) ..................................................................... 3, 4

*Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*,
   646 F.3d 924 (D.C. Cir. 2011) ......................................................................... 18, 19

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991) ................................................................................... 22

*Kissinger v. Reporters Comm. for Freedom of Press*,
   445 U.S. 136 (1980) ................................................................................................ 17

*Kroposki v. Fed. Aviation Admin.*,
  No. 08 Civ. 01519, 2010 WL 11565869 (D. Conn. June 1, 2010) ........................................ 5, 8

*Leopold v. CIA*,
  177 F. Supp. 3d 479 (D.D.C. 2016) ........................................................................................ 4

*Long v. U.S. Dep't of Justice*,
  450 F. Supp. 2d 42 (D.D.C. 2006) ........................................................................................ 10

*Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*,
  415 F. App'x 264 (2d Cir. 2011) .......................................................................................... 22

*Muttitt v. Dep't of State*,
  926 F. Supp. 2d 284 (D.D.C. 2013) .............................................................................. 9, 10, 12

*Muttitt v. U.S. Cent. Command*,
  813 F. Supp. 2d 221 (D.D.C. 2011) .................................................................................. 10, 11

*Navigators Ins. Co. v. Dep't of Justice*,
  155 F. Supp. 3d 157 (D. Conn. 2016) ................................................................................ 21, 22

*New York Times v. FBI*,
  822 F. Supp. 2d 426 (S.D.N.Y. 2011) .................................................................................. 15

*Physicians Committee for Responsible Med. v. U.S. Dep't of Agriculture*,
  316 F. Supp. 3d 1 (D.D.C. 2018) .............................................................................. 18, 19, 20

*Polewsky v. Social Sec. Admin.*,
  No. 95-6125, 1996 WL 110179 (2d Cir. Mar. 12, 1996) .......................................................... 8

*Robinson v. Overseas Military Sales Corp.*,
  21 F.3d 502 (2d Cir. 1994) .................................................................................................... 3

*Scudder v. CIA*,
  281 F. Supp. 3d 124 (D.D.C. 2017) .................................................................................. 10, 11

*Sikes v. U.S. Department of the Navy*,
  896 F.3d 1227 (11th Cir. 2018) ............................................................................................ 6

*Sonds v. Huff*,
  391 F. Supp. 2d 152 (D.D.C. 2005) ...................................................................................... 21

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................................................ 15

*Tax Analysts v. U.S. Dep't of Justice*,
  845 F.2d 1060 (D.C. Cir. 1988) ............................................................................................ 19

*United States Department of Justice v. Tax Analysts*,
   492 U.S. 136 (1989)..............................................................................*passim*

*UtahAmerican Energy, Inc. v. Dep't of Labor*,
   685 F.3d 1118 (D.C. Cir. 2012)................................................................ 4, 5, 7

*Williams & Connolly v. Sec. & Exch. Comm'n*,
   662 F.3d 1240 (D.C. Cir. 2011)................................................................ 4, 6

**Statutes**

5 U.S.C. § 552(a)(3)................................................................................ 9

5 U.S.C. § 552(a)(4)(B)............................................................................ 17, 21

**Rules**

Federal Rule of Civil Procedure 12(b)(1)..................................................... 12

Federal Rule of Civil Procedure 56(a)........................................................ 16

**Regulations**

6 C.F.R. § 5.4(d)................................................................................... 6, 12, 21

6 C.F.R. §§ 5.5–5.6................................................................................ 9

## PRELIMINARY STATEMENT

This is an action brought under the Freedom of Information Act ("FOIA") seeking records pertaining to J.D.,[1] the client of the International Refugee Assistance Project, Inc. ("IRAP"), that are maintained by the Department of State ("DOS") in its refugee case management system, the Worldwide Refugee Admissions Processing System ("WRAPS"). The purpose of FOIA is the provision of agency records. Here, there is no dispute that purpose has been met, as IRAP has received the precise records that it seeks in this lawsuit. Because IRAP has obtained the relief that FOIA provides, this case is moot and should be dismissed.

IRAP claims that the Court should nevertheless adjudicate the question whether records maintained in WRAPS are United States Citizenship and Immigration Services ("USCIS") agency records, even though IRAP has already obtained those records from DOS. In support of its position, IRAP submits a 97-paragraph statement of purportedly undisputed facts, *see* Dkt. No. 45, which consists of largely irrelevant, immaterial assertions that frequently mischaracterize or are not supported by the cited evidence. *See* USCIS Local Rule 56.1 Counterstatement.

But the Court need not reach this fact-intensive inquiry. The law is clear that two agencies need not produce identical records to the same requestor under FOIA, and thus DOS's release of J.D.'s refugee case file maintained in WRAPS moots this action. To the extent IRAP seeks to challenge DOS's withholdings from the records, it can do so through the regular administrative process at DOS and seek judicial review if it is not satisfied.

IRAP cannot avoid mootness by citing a purported "pattern and practice" by USCIS not to search WRAPS in response to FOIA requests. IRAP does not contend (nor could it show) that the exception to mootness for matters "capable of repetition yet evading review" applies here. And

---

[1] To preserve the confidentiality of IRAP's client, this brief refers to him as John Doe, or "J.D."

IRAP has not alleged a FOIA "pattern and practice" claim in its complaint, which seeks only the disclosure of the specific records sought in IRAP's FOIA request. Nor could IRAP plausibly plead such a pattern and practice claim under FOIA. The records at issue can be (and have been) obtained under FOIA from DOS, the agency that indisputably owns and maintains WRAPS. Moreover, DOS is in the process of decommissioning WRAPS, with expected completion by the end of 2021. WRAPS will be fully replaced by a DOS system called START. USCIS will not have access to START; rather, USCIS will have its own system called Global, and Global will maintain the information related to USCIS's adjudication of refugee applications. The imminent retirement of WRAPS renders implausible any alleged difficulty in obtaining refugee case file records from USCIS in the future.

Because IRAP has received the relief it seeks in this lawsuit—disclosure of J.D.'s records maintained in WRAPS—and IRAP has not alleged and cannot plausibly allege a pattern and practice claim, this lawsuit is moot. Any decision on whether WRAPS are agency records of USCIS would be tantamount to an advisory opinion in contravention of Article III of the Constitution. The Court therefore should not reach IRAP's motion for summary judgment. But even if the Court were to reach IRAP's motion and adjudicate whether WRAPS records are USCIS agency records under the test set forth in *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), the Court should deny the motion. IRAP fails to meet its burden on summary judgment to show that the broad swath of refugee case records maintained in the WRAPS system, a system owned and controlled by DOS, are USCIS agency records. IRAP is not entitled to declaratory relief under the circumstances presented here.

Accordingly, the Court should grant USCIS's motion to dismiss and deny IRAP's motion for summary judgment, as moot.

**ARGUMENT**

## I.   THE COURT LACKS JURISDICTION OVER THIS ACTION BECAUSE IRAP'S CLAIM IS MOOT

Because IRAP has received the documents sought by its complaint, its FOIA claim is moot, and IRAP cannot meet its burden of establishing that subject matter jurisdiction exists over its complaint. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

### A.   FOIA Does Not Require Two Agencies to Produce Identical, Duplicate Records Retrieved from the Same Database to the Same Requestor

There is no dispute that IRAP has received from DOS the identical set of records maintained in WRAPS that IRAP seeks from USCIS in this lawsuit. DOS, in response to an identical FOIA request from IRAP submitted on the same day as the request to USCIS, produced all non-exempt portions of responsive records maintained in WRAPS pertaining to IRAP's client, J.D. *See* USCIS Opening Memorandum of Law (Dkt. No. 30) ("USCIS Br.") at 1, 6, 8-11; IRAP Combined Memorandum of Law (Dkt. No. 41) ("IRAP Br.") at 10-11. Because IRAP has received all of the requested records, the relief it seeks in this lawsuit is moot.

IRAP claims that FOIA requires two agencies to produce the identical records retrieved from the same database in response to identical FOIA requests submitted simultaneously from the same requestor. *See* IRAP Br. at 8-10. But as courts have recognized, such a "reading of FOIA is far too constrained. The purpose of FOIA is satisfied when *an agency* produces the requested pages." *Jett v. FBI*, 139 F. Supp. 3d 352, 364 (D.D.C. 2015) (emphasis added) (citing *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10-11 (D.C. Cir. 1980) (rejecting requestor's argument that "FOIA permits agencies to decline production only if the materials sought fall within one of the nine enumerated statutory exemptions")). Here, IRAP's FOIA request was processed by DOS, and thus IRAP's identical request to USCIS for those same documents is moot. *See Crooker*, 628 F.2d at 10; USCIS Br. 9-11.

3

Despite having received the requested records, IRAP seeks an order for USCIS to process the same records again. Such an order would require this Court to depart from a long line of decisions from the D.C. Circuit—"something of a specialist" in adjudicating FOIA cases, *Brennan Ctr. for Justice at NYU v. U.S. Dep't of Justice*, 697 F.3d 184, 200 (2d Cir. 2012)—holding that an agency need not produce identical records to the same requestor when another agency or component has already released those same records. *See Crooker*, 628 F.2d at 10 ("The Freedom of Information Act does not require that the agency from which documents are requested must release copies of those documents when another agency possessing the same material has already done so."); *Williams & Connolly v. Sec. & Exch. Comm'n*, 662 F.3d 1240, 1243 (D.C. Cir. 2011) ("[A]n agency has no obligation to release documents to a requester when another agency has already given the same requester the same documents."); *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1123-25 (D.C. Cir. 2012) (reversing district court's holding that the Department of Labor ("DOL") had to process identical records that were processed, but withheld based upon FOIA exemptions, by the Mine Safety and Health Administration ("MSHA") and subject to separate FOIA litigation by same requestor); *see also Competitive Enterprise Inst. v. Office of Science & Tech. Policy*, 241 F. Supp. 3d 14, 23 (D.D.C. 2017) ("FOIA does not require agencies to produce duplicate records."); *Leopold v. CIA*, 177 F. Supp. 3d 479, 490 (D.D.C. 2016) (an agency need not produce duplicate copies of identical pages because "the government's obligations under FOIA are 'satisfied when an agency produces the requested pages'" (quoting *Jett*, 139 F. Supp. 3d at 364)); *Boyd v. Executive Office for United States Attorneys*, 87 F. Supp. 3d 58, 87-89 (D.D.C. 2015) (holding that Bureau of Alcohol, Tobacco and Firearms ("ATF") did not need to process documents referred by the Executive Office for United States Attorneys because ATF had already processed those records in response to a separate FOIA request from

same requestor), *aff'd*, No. 16-5133, 2016 WL 6237850 (D.C. Cir. Sept. 16, 2016). Other courts have followed this rule, including district courts in this Circuit. *Kroposki v. Fed. Aviation Admin.*, No. 08 Civ. 01519, 2010 WL 11565869, at *4 (D. Conn. June 1, 2010) ("In FOIA cases, mootness occurs when requested documents have already been produced. Production of the documents nullifies the legally cognizable interest the requesting party possesses in the outcome of the lawsuit." (quotation marks and citation omitted)); *see also* USCIS Br. 8-9.

Contrary to IRAP's argument, these decisions are entirely consistent with FOIA and the Supreme Court's decision in *Tax Analysts*, and they should be followed here. Consistent with FOIA's purpose of access to governmental materials, *Tax Analysts* held that an agency cannot refuse to process records because those records have become publicly available through a non-agency source. 492 U.S. at 152-153. *Tax Analysts* did not hold that two agencies must independently process the identical records for the same requestor, a result that would permit "the same FOIA plaintiff multiple bites at the apple," *UtahAmerican Energy*, 685 F.3d at 1124, and would be "abusive and a dissipation of agency and court resources," *Crooker*, 628 F.2d at 11. Under IRAP's theory, an agency must search for and process duplicate records and reassert any applicable FOIA exemptions. This position would be a waste of already strained agency resources for no appreciable gain to the requester or furtherance of the policies underlying FOIA.

The relief IRAP seeks here would amount to a second, duplicative request to both agencies. With respect to the records in WRAPS concerning J.D. that originated with USCIS, DOS already consulted with USCIS concerning those records and USCIS reviewed the proposed withholdings prior to release of the documents to IRAP. Supplemental Declaration of Terri White ("Supp. White Decl.") ¶¶ 2, 4. Because the remainder of the requested WRAPS records regarding J.D. originated with DOS, other agencies, outside organizations, or foreign governments, if USCIS were to further

process IRAP's FOIA request, pursuant to DHS FOIA regulations, USCIS would refer the remainder of the request to DOS for processing. *Id.* ¶ 5 (citing 6 C.F.R. § 5.4(d) ("The component may refer the responsibility for responding to the request or portion of the request to the component or agency best able to determine whether to disclose the relevant records, or to the agency that created or initially acquired the record as long as that agency is subject to the FOIA.")). Thus, ordering the relief IRAP seeks would effectively be a duplicate request to both agencies—USCIS would search for and process USCIS records it has already reviewed through consultations with DOS, and the remainder of the FOIA request would be referred to DOS, which has already processed the identical request.[2]

Because IRAP has already obtained J.D.'s records maintained in WRAPS, the relief that IRAP seeks in this lawsuit—a compelled search for and disclosure of J.D.'s records maintained in WRAPS—is moot. *See Williams & Connolly*, 662 F.3d at 1243-44.

### B.   Having Elected Not to Name DOS as a Defendant, IRAP Cannot Challenge DOS's Withholdings in This Forum

IRAP claims this case is not moot because certain of the records released by DOS contain redactions based upon certain of FOIA's enumerated exemptions. *See* IRAP Br. 10-11.[3] Having elected not to name DOS as a defendant, however, IRAP cannot litigate the withholdings of DOS,

---

[2] The single decision that IRAP cites on this point, *Sikes v. U.S. Department of the Navy*, 896 F.3d 1227, 1234 (11th Cir. 2018), *see* IRAP Br. at 8, supports USCIS's position. The Eleventh Circuit held in *Sikes* that the Navy could not refuse to respond to a second FOIA request made years after the initial request. *See* 896 F.3d at 1234 n.3. The Court explicitly "note[d]," however, that "the circumstances might be different where an agency finds multiple copies of the same document within the materials responsive to a FOIA request (or batch of simultaneous requests)." *Id.* Here, IRAP submitted a "batch of simultaneous requests" to DOS and USCIS for the identical set of records, and requiring USCIS to process the identical records again would in effect require the agencies to respond a second time to the same request. *See Crooker*, 628 F.2d at 11.

[3] Notably, IRAP is not challenging the scope or the reasonableness of the search conducted by DOS. IRAP concedes that it has received its client's entire file maintained in WRAPS, with the exception of material that DOS determined to be exempt from disclosure.

a nonparty, in this lawsuit. *See* USCIS Br. at 9 n.3. IRAP can appeal DOS's withholdings administratively and, if not satisfied, file a lawsuit against DOS seeking review of that agency's withholdings, or seek to amend this complaint to add DOS as a necessary party. What IRAP cannot do is force USCIS to defend DOS's withholdings in this case, having elected to name only USCIS and not DOS as a defendant.

Moreover, IRAP's position—requiring duplicative processing and allowing a FOIA requestor to seek judicial review of that processing in two separate lawsuits—presents a real possibility that two courts could address the same disclosure issues with conflicting results. The D.C. Circuit has declined to allow FOIA requestors to "seek[] orders from two different judges directing the production of the same documents," noting that "[w]ere both claims to proceed, the respective district courts would be required to duplicate their efforts. Moreover, the twin claims could generate contradictory results that could, in turn, generate dueling appeals." *UtahAmerican Energy*, 685 F.3d at 1124. This concern is "particularly acute in FOIA cases, where multiple components of the same agency may withhold the same documents on the same grounds, thus potentially generating multiple lawsuits and appeals raising the same issues." *Id.* at 1125. The D.C. Circuit saw "no reason to permit FOIA litigation to proceed down that path." *Id.*[4] Likewise here, IRAP should not be permitted to litigate the withholdings of a non-party agency in this lawsuit or file dueling lawsuits over the identical documents.

---

[4] In *UtahAmerican Energy*, the same requestor filed two separate lawsuits, the first against MSHA and the second against DOL, seeking the same records. DOL did not process the request for those records because MSHA already had processed and withheld them under one of FOIA's exemptions. 685 F.3d at 1123. Although part of the D.C. Circuit's rationale for holding that DOL need not process the identical records was comity for the first-filed lawsuit, the fundamental principle undergirding the D.C. Circuit's holding applies with equal force here: IRAP should not be permitted to litigate the same withholdings in two separate forums in the hopes of obtaining a more favorable result.

### C.     IRAP Cannot Avoid Mootness by Citing a Purported Pattern and Practice

Although another agency's production of records generally moots a FOIA claim, a plaintiff may avoid mootness where it can demonstrate that the issue is "capable of repetition yet evading review." *See Kroposki*, 2010 WL 11565869, at *4 ("Only if the case is capable of repetition yet evading review will production fail to moot the case."). IRAP notably does not argue that this exception applies here, nor could it, as there is no reason why the claim would "evade review" in future cases. This lawsuit is in this posture because IRAP submitted identical FOIA requests to two agencies for the same records and then elected to name only one of them as a defendant. Nothing prevents IRAP from submitting a FOIA request for WRAPS records to USCIS only, and then seeking judicial review of USCIS's response. Thus, even if the alleged USCIS practice were capable of repetition, it would not evade review. *See Polewsky v. Social Sec. Admin.*, No. 95-6125, 1996 WL 110179, at *2 (2d Cir. Mar. 12, 1996) (holding Privacy Act claim was moot because even though issue was "capable of repetition when, and if, [plaintiff] makes a future request for medical records, it has not been shown to evade review").

Although IRAP cannot satisfy the exception to the mootness doctrine, IRAP nevertheless argues that this lawsuit is not moot because USCIS's alleged "practice of refusing to search WRAPS will continue to harm IRAP in the future." IRAP Br. at 11-12. IRAP appears to be arguing that it has a separate "pattern and practice" claim under FOIA that is distinct from its claim for production of the records. IRAP, however, has not alleged a FOIA pattern and practice cause of action in its complaint. Nor could IRAP plausibly allege such a claim, as the imminent retirement of the WRAPS database will obviate any future harm from the alleged USCIS practice.

### 1.     IRAP Has Not Alleged a FOIA Pattern and Practice Claim

In sharp contrast to the cases cited in IRAP's brief, *see* IRAP Br. at 12, IRAP's complaint in this case asserts a single cause of action seeking production of the documents requested under

FOIA. The sole claim for relief in the complaint states: "Plaintiff has a legal right under the FOIA to obtain *the specific records sought in the request*, and Defendant's failure to promptly make *the requested records* available to Plaintiff has no legal basis. Defendant's failure to conduct a reasonable search for *the records responsive to the request* and to promptly make them available violates the FOIA, 5 U.S.C. § 552(a)(3), and applicable regulations promulgated thereunder, 6 C.F.R. §§ 5.5–5.6." Compl. (Dkt. No. 1) ¶¶ 64-65 (emphasis added). The complaint asserts no other cause of action. Nor does the complaint's prayer for relief include a request for declaratory relief in connection with the agency's policies or practices with respect to the general processing and release of documents under FOIA. *See* Compl. ¶¶ 64-66 (Claim for Relief), Prayer for Relief.

Although IRAP has sprinkled in its complaint a handful of vague references to an alleged USCIS practice of refusing to search WRAPS, *see, e.g.*, *id.* ¶¶ 1-2, 62, USCIS cannot be expected to respond to an entirely separate and distinct claim for declaratory relief that is not asserted as a cause of action or as part of the complaint's prayer for relief. *See Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 294 (D.D.C. 2013) ("Rule 8 of the Federal Rules of Civil Procedure requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

*Muttitt* is instructive here. The plaintiff FOIA requestor in that case sought to assert a pattern and practice claim, but the complaint "did not state a separate cause of action for any policy or practice related to the denial of requests for expedited processing or fee waivers." *Id.* at 293. Like IRAP, the plaintiff attempted to rely upon vague language in his prayer for relief, but the court found that argument "wholly unavailing," noting that "[n]othing in the language of the plaintiff's Prayer for Relief convey[ed] the slightest desire, let alone a 'clear intent' to raise a

policy-or-practice claim related to expedited processing or fee waivers. On the contrary, the language of the plaintiff's Prayer for Relief focuse[d] on specific denials of requests for expedited processing and fee waivers." *Id.* at 294 (alterations and citations omitted). Similarly here, the few vague references in the complaint to a supposed USCIS policy or practice of not searching WRAPS "do[] not magically enlarge [IRAP's] otherwise specific FOIA claims into broad, policy-or-practice claims." *Id.*; *see also Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 62 (D.D.C. 2006) (dismissing FOIA claim as moot after Government released the records at issue because, as here, the plaintiffs were "challenging the application of a *specific* FOIA exemption to *specific* records in the context of a *specific* FOIA request" (emphasis in original)).

Nor has IRAP pleaded sufficient factual content to support a pattern and practice claim under FOIA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)). IRAP's "allegation of a single FOIA violation is insufficient as a matter of law to state a claim for relief based on a policy, pattern, or practice of violating FOIA." *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 (D.D.C. 2011). To allege a pattern and practice claim under FOIA, IRAP would need to set forth "factually specific allegations of multiple FOIA violations [that] are sufficiently detailed to state a pattern or practice claim." *Id.* at 230 (upholding pattern and practice claim against one agency because the plaintiff "alleged that on two separate dates he requested estimated completion dates from State for five separate FOIA requests . . . [and] identifie[d] the relevant dates and the identifying numbers of the FOIA requests at issue"); *see also Scudder v. CIA*, 281 F. Supp. 3d 124, 128-130 (D.D.C. 2017).

Here, IRAP has "not alleged any instance where the Defendant was found to have violated FOIA—or even a specific instance where the Defendant allegedly violated FOIA—by failing to provide the requested information." *Scudder*, 281 F. Supp. 3d at 129. Rather than including the required factually specific allegations of past FOIA violations, IRAP relies on scattered and conclusory references to an alleged USCIS practice. *See, e.g.*, Compl. ¶¶ 1-2, 62. Such vague and factually unsupported assertions are simply not the stuff of a pattern and practice claim. *See Muttitt*, 813 F. Supp. 2d at 230.

The Court should disregard IRAP's improper attempt to bolster its non-existent pattern and practice claim with similarly threadbare claims in the Poellot Declaration (Dkt. No. 43). Factual allegations in an attorney declaration cannot save a claim that was not pleaded in the complaint. *See Bravado Int'l Grp. Merchandising Services, Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 193 (E.D.N.Y. 2009). But even if the Court were to consider the assertions in the Poellot Declaration, they still fail to set forth with any detail any past FOIA requests made by IRAP for a similar set of records that prompted a similar response based upon a similar reason. *See* Poellot Declaration ¶¶ 8-9; *Scudder*, 281 F. Supp. 3d at 129.

## 2.    IRAP Cannot Plausibly Allege a Pattern or Practice Claim

IRAP states in a footnote that "[s]hould the Court conclude that IRAP has not adequately pleaded such a claim, IRAP intends to seek leave to amend." IRAP Br. at 13 n.4. The Court should not entertain a motion for leave to amend at this late stage, given that IRAP has been on notice for months that USCIS intended to move to dismiss the complaint as moot in light of DOS's production of the records requested from USCIS.[5] In any event, USCIS would oppose any such

---

[5] IRAP erroneously contends that USCIS failed to inform IRAP in accordance with this Court's Individual Rules of USCIS's intent to move to dismiss. *See* IRAP Br. at 13 n.4. In fact, USCIS has contended from the outset that DOS's production of the records sought in IRAP's identical FOIA requests sent to both USCIS and DOS rendered this case moot. *See* Aug. 24 Letter (Dkt. No. 18)

amendment as futile because IRAP cannot plausibly allege a pattern and practice claim under FOIA.

First, IRAP cannot plausibly allege any agency pattern or practice to deny IRAP access to WRAPS records. *See Muttitt*, 926 F. Supp. 2d at 293 (requestor must allege that "an agency policy or practice will impair the party's lawful access to information in the future." (citation and quotation marks omitted)). As this case demonstrates, the alleged USCIS practice of not searching the WRAPS database in response to FOIA requests does not preclude IRAP from obtaining the requested records from DOS—the agency which indisputably owns and maintains WRAPS and which provided J.D.'s records to IRAP in response to its FOIA request. Indeed, DHS's FOIA regulations explicitly authorize DHS components like USCIS to "refer the responsibility for responding" to a FOIA request, or portion of a request, to "to the component or agency best able to determine whether to disclose the relevant records, or to the agency that created or initially acquired the record as long as that agency is subject to the FOIA." 6 C.F.R. § 5.4(d).

That IRAP—through its own actions—has chosen to pursue FOIA litigation against USCIS to obtain its client's WRAPS file, even though it can (and has) obtained the same records directly from the agency that owns and maintains WRAPS, does not show a pattern or practice of violating

---

at 2. Further, upon learning that DOS had inadvertently not released all of the requested records maintained in WRAPS, on December 7, 2020, USCIS alerted the Court and IRAP that "once the remaining non-exempt records are released, USCIS intends to move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)." Dkt. No. 25 at 2. Despite being on notice, IRAP never sought to amend its complaint to include a pattern and practice claim or advised USCIS that it intended to seek leave to amend. Indeed, in opposing USCIS's motion for an extension of time to file its motion to dismiss, IRAP acknowledged that the mootness issue had been identified (and contested by IRAP) "since the parties jointly proposed the original briefing schedule in August." Dkt. No. 25 at 3. Thus, although USCIS regrettably did not include a statement in its notice of motion that IRAP declined an opportunity to amend, IRAP should not be permitted to benefit from that oversight, having known for months that USCIS intended to move to dismiss and declined to take any steps to (or even notify USCIS of its intent to) amend its complaint.

FOIA. IRAP does not (and cannot) allege that any agency is trying to prevent IRAP's access to its client's refugee records or has a policy or practice that prevents IRAP from obtaining such records. To the contrary, the undisputed record shows that DOS processed the requested records and provided them to IRAP. For reasons that are not clear, IRAP has strategically chosen to sue USCIS in this litigation rather than DOS. But IRAP cannot evade the mootness doctrine by attempting to manufacture a pattern and practice claim through its own actions.

Second, IRAP cannot plausibly allege future harm stemming from USCIS's alleged practice of not searching WRAPS. As set forth in the Supplemental Ingraham Declaration ("Supp. Ingraham Decl.") and the Ruppel Declaration ("Ruppel Decl."), DOS is in the process of decommissioning the WRAPS database, and DOS expects that the WRAPS database will be fully retired by late 2021. Supp. Ingraham Decl. ¶¶ 15-18; Ruppel Decl. ¶¶ 13-16. DOS has developed a system called START to replace WRAPS. Supp. Ingraham Decl. ¶ 15. DOS has already transferred the case data maintained in WRAPS to START for refugees under the jurisdiction of DOS's Resettlement Support Center ("RSC") Austria and RSC Latin America, as well at Botswana and Madagascar. *Id.* ¶ 18. DOS expects to transfer the files for those refugees under the jurisdiction of the remaining RSCs over the course of this year, finishing by late 2021. *Id.* For the RSCs that have migrated into START, data relevant to USCIS adjudications in START is automatically sent to Global through the electronic interface. As RSCs migrate from WRAPS to START over the course of this year, data in START relevant to USCIS adjudications will be transmitted to Global through the START-Global electronic interface. *Id.*

USCIS refugee officers will lose access to WRAPS once it is decommissioned, and they will not have access to START. Supp. Ingraham Decl. ¶¶ 15, 17; Ruppel Decl. ¶ 16. START and Global will exchange relevant data and the information USCIS needs to adjudicate refugee

applications will be housed in Global. Ruppel Decl. ¶ 16. USCIS is also currently implementing features in Global that will intake Form I-590 data so that USCIS refugee officers may interview and adjudicate pending cases using Global. *Id.* ¶ 14. USCIS has begun issuing approvals in the system on a limited basis. *Id.* Soon, USCIS refugee officers will input interview and decision information, such as interview notes and all final adjudicative decisions, in Global. Once a final decision has been made on a case, Global communicates that decision to DOS to complete processing. *Id.* These features are being rolled out to cases in conjunction with the transition from WRAPS to START. *Id.*

In light of the ongoing decommissioning of WRaps, IRAP cannot plausibly allege that the alleged USCIS practice of refusing to search WRAPS in response to FOIA requests will cause it future harm. WRAPS is already obsolete for case data for refugees located at RSC Austria and RSC Latin America, as well as Botswana and Madagascar. Soon, it will be obsolete for all refugee case data. Because WRAPS will soon no longer exist, IRAP's claim of USCIS's alleged practice, even assuming it exists, will cease to harm IRAP by the end of the year.

\*        \*        \*

Because IRAP's vague, conclusory allegations of a USCIS practice fall far short of alleging a pattern and practice claim, and IRAP cannot plausibly allege such a claim, IRAP cannot avoid dismissal of the complaint on mootness grounds. Accordingly, the Court should dismiss IRAP's complaint for lack of subject matter jurisdiction.

## II.   THE COURT SHOULD DENY IRAP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

IRAP's summary judgment motion appears to request declaratory relief that *all* "refugee case files" maintained in WRAPS, a database indisputably maintained and owned by DOS, are USCIS agency records for purposes of FOIA. *See* IRAP Br. at 14-18; IRAP Proposed Order (Dkt.

No. 41-1). IRAP does not define what comprises "refugee case files" in WRAPS, and yet it argues that USCIS must search for all such files, whether they originated with USCIS or not, in a database that indisputably belongs to another agency.

The Court should deny IRAP's motion for summary judgment. First, the Court need not even reach the motion because IRAP has already received the requested records and the only claim pleaded in IRAP's complaint is therefore moot. Any decision on IRAP's motion would be an advisory opinion in contravention of Article III of the Constitution. Second, even if the Court were to reach IRAP's motion, IRAP has not met its burden on summary judgment to show that all refugee case file records maintained in WRAPS, a DOS database, are USCIS agency records for purposes of FOIA. Third, FOIA does not permit IRAP to obtain the declaratory relief that IRAP seeks.

### A.    The Court Should Not Reach IRAP's Summary Judgment Motion

As set forth in USCIS's opening brief and above, IRAP has already received the identical records from DOS that it seeks from USCIS: J.D.'s refugee case file as maintained in WRAPS. Despite having already received J.D.'s records from WRAPS, IRAP persists in seeking a judicial finding that USCIS is also obligated to search WRAPS on the ground that records within WRAPS constitute USCIS agency records under the Supreme Court's decision in *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989). However, IRAP's claim in this case is moot, *see supra* Section I, and any decision by this Court about whether WRAPS records are agency records of USCIS for purposes of FOIA would be an advisory opinion in contravention of Article III's case or controversy requirement. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning."); *New York Times v. FBI*, 822 F. Supp. 2d 426, 431 (S.D.N.Y. 2011) ("[T]he Court would be unwise

to issue a declaration that the initial withholding of the Assessment Statistics under Exemption 2 and Exemption 7(E) were in fact unlawful because such a declaration would be an advisory opinion which federal courts may not provide." (internal quotation marks and citation omitted)); *Comp. Enterprise Inst.*, 241 F. Supp. 3d at 21 ("[T]his Court need not determine if the Woods Hole emails are agency records because the Government's arguments regarding duplicate records and its reasonable search are determinative.").

IRAP's argument that "USCIS has failed to carry its burden to establish that refugee case files are not USCIS records—an essential element of USCIS's defense," IRAP Br. 14-15, is a red herring. Contrary to IRAP's assertion, USCIS did not move to dismiss IRAP's complaint on this ground; USCIS moved to dismiss IRAP's complaint because IRAP's sole request for relief in this lawsuit—production of the requested records—is moot. Article III's case or controversy requirement does not permit IRAP to obtain summary judgment based upon a hypothetical scenario in response to an argument USCIS did not make. That IRAP desires a judicial ruling that WRAPS records are USCIS agency records under the *Tax Analysts* test does not transform this lawsuit a live case or controversy.

**B.      IRAP Has Not Met Its Burden to Show No Genuine Dispute That All "Refugee Case File" Records Maintained in DOS's WRAPS System Are USCIS Agency Records**

If the Court reaches IRAP's motion for summary judgment, it should deny the motion because IRAP fails to meet its burden to show that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." *Chambers v. TRM Copy Ctr. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citation omitted). In evaluating whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If, as to the issue on

which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers*, 43 F.3d at 37.

Under FOIA, a district court has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records," 5 U.S.C. § 552(a)(4)(B), only if it is shown that the "agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Tax Analysts*, 492 U.S. at 142 (quoting *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980)). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Id.* In *Tax Analysts*, the Supreme Court established a two-prong test to determine whether documents qualify as agency records: they must (i) either be "create[d] or obtain[ed]" by an agency, *and* (ii) be in the agency's "control . . . at the time the FOIA request is made." *Id.* at 144-45 (emphasis added).

As to the first prong of the *Tax Analysts* test, IRAP assumes that all records maintained in WRAPS are either created or obtained by USCIS, erroneously claiming that only two types of records exist: (1) those that USCIS creates; and (2) those that USCIS relies upon in carrying out its responsibilities. IRAP Br. at 16. IRAP's assertion oversimplifies and mischaracterizes the records that are maintained in WRAPS. Although USCIS refugee officers create or rely upon *some* refugee case file records maintained in WRAPS, there are records within WRAPS that USCIS refugee officers would not typically access during the course of their duties. Supp. Ingraham Decl. ¶ 12; Ruppel Decl. ¶ 5.

The fact that USCIS has read-only access to WRAPS and the ability to review records in WRAPS does not demonstrate that USCIS "creates or obtains" all records in WRAPS under the

first prong of *Tax Analysts*.[6] The Supreme Court held in *Forsham v. Harris* that documents an agency has the right to acquire do not become agency records subject to FOIA "unless and until that right is exercised." 445 U.S. 169, 181 (1980). Thus, an agency's "right of access to the materials" does not transform records into "agency records" under FOIA. *Tax Analysts*, 492 U.S. at 144 (discussing *Forsham*). That is because "FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained." *Forsham*, 445 U.S. at 185-86 (emphasis in original). By ordering an agency to "exercise its right of access," the Court "effectively would be compelling the agency to 'create' an agency record," and this would "extend the reach of [FOIA] beyond what . . . Congress intended." *Id.* at 186; *see also Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 928 (D.C. Cir. 2011) ("Although there is no doubt that the FHFA could consult the requested records as it conducts its business, the problem for Judicial Watch is that no one from the FHFA has done so. The Supreme Court held in *Forsham v. Harris* that documents an agency had the right to acquire would not become agency records subject to FOIA 'unless and until the right is exercised.'"); *Physicians Committee for Responsible Med. v. U.S. Dep't of Agriculture*, 316 F. Supp. 3d 1, 9 (D.D.C. 2018) (holding that agency's ability to audit records did not transform them into agency records for purposes of FOIA). Because there are documents that comprise a refugee's case file maintained in WRAPS that a refugee officer did not create and would not necessarily access, IRAP has not satisfied its burden on summary judgment to show that all of the requested records are agency records of USCIS.

IRAP also fails to satisfy its burden to establish the second prong of *Tax Analysts*, that all of the requested documents in WRAPS are "controlled" by USCIS. The Supreme Court has defined

---

[6] USCIS does not contest that records that USCIS creates or records generated on USCIS forms are USCIS agency records.

"control" to mean "the materials have come into the agency's possession in the legitimate conduct of its official duties. *Tax Analysts*, 492 U.S. at 145. Here, as explained above, not all of the records in WRAPS are accessed and used by USCIS—much less come into its possession—in the conduct of official agency duties. Supp. Ingraham Decl. ¶ 12; Ruppel Decl. ¶ 5.

This conclusion is underscored by application of the four-factor test applied by the D.C. Circuit in *Tax Analysts*. The D.C. Circuit looked to four factors to determine whether the agency controlled the record in question: (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files. *Tax Analysts v. U.S. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd*, 492 U.S. 136 (1989); *see also Judicial Watch*, 646 F.3d at 926-28 (continuing to apply four-factor test after Supreme Court's decision in *Tax Analysts*); *Physicians Committee for Responsible Med.*, 316 F. Supp. 3d at 9-10.

The first *Tax Analysts* factor—intent—clearly favors a finding that DOS controls non-USCIS records. It is undisputed that DOS never intended to relinquish control of the records that are stored in its database. That intent is reflected in the undisputed fact that DOS controls the database where the records are stored, and DOS determines who obtains access and on what terms. Supp. Ingraham Decl. ¶ 11. Due to USCIS's operational need, DOS provides USCIS refugee officers with read-only access to WRAPS to review and adjudicate refugee applications. *See id.* At all points, DOS retains control over the records, as DOS approves who at USCIS can access the records and limits those individuals' use of the system. *Id.* ¶¶ 11, 13.

The second *Tax Analysts* factor—the ability of USCIS to use and dispose of the records as it sees fit—also weighs in favor of DOS control. Because USCIS receives read-only access, it

cannot alter, dispose of, or delete the records maintained in DOS's WRAPS database. Supp. Ingraham Decl. ¶ 13. While USCIS refugee officers can read records within WRAPS following DOS authorization, USCIS cannot dispose of the records as it sees fit. Rather, WRAPS records are disposed of in accordance with DOS policy. *Id.*

The third *Tax Analysts* factor—the extent to which agency personnel have read or relied upon the document—favors DOS control with respect to those documents in WRAPS that USCIS personnel have not in fact reviewed during the course of reviewing and adjudicating refugee applications. As set forth in the Supplemental Ingraham Declaration, there are documents maintained in WRAPS that would be considered part of a refugee's case file that USCIS refugee officers would not have need to review in the course of their duties. *See* Supp. Ingraham Decl. ¶ 12; *see also* Ruppel Decl. ¶ 5.

The fourth and final *Tax Analysts* factor—the degree to which the document was integrated into the agency's record system or files—also demonstrates DOS control. WRAPS is indisputably a DOS-owned and maintained system. Supp. Ingraham Decl. ¶ 8. By definition, WRAPS records have not been integrated into USCIS records systems, as authorized USCIS users have only the ability to review the WRAPS records on a read-only basis. *See id.* ¶ 11.

For all these reasons, IRAP fails to satisfy its burden to show no genuine dispute that all WRAPS records are agency records of USCIS. That does not mean, however, IRAP has no ability to obtain the records under FOIA. DOS is an agency subject to FOIA, and it has released the requested records to IRAP in response to an identical FOIA request. Indeed, if the Court were to order USCIS to search WRAPS in response to the FOIA request, USCIS would produce the same USCIS-generated records that DOS has already produced (on which USCIS was already consulted by DOS) and refer the remaining portion of the request to DOS pursuant to the DHS FOIA

regulations. *See supra* Section I.A; Supp. White Decl. ¶ 5 (citing 6 C.F.R. §5.4(d) (permitting DHS components to refer responsibility for responding to FOIA request, or portion of request, "to the agency that created or initially acquired the record as long as that agency is subject to the FOIA")); *see also Sonds v. Huff*, 391 F. Supp. 2d 152, 160 (D.D.C. 2005), *aff'd*, 2006 WL 3093808 (D.C. Cir. 2006) (agency is "not required to respond to a FOIA request that should be directed to another agency"). Accordingly, even if IRAP were successful on this motion, it would receive the identical records it already has.

### C.   FOIA Does Not Permit IRAP to Seek Declaratory Relief

FOIA provides that district courts have "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Despite having already received the requested records, IRAP appears to seek declaratory relief that USCIS violated FOIA by not searching for J.D.'s refugee case files contained in DOS's WRAPS database. *See* IRAP Br. at 16-18; IRAP Proposed Order ¶ 1 (Dkt. No. 41-1). The declaratory relief IRAP seeks is not available under FOIA, however, as courts grant declaratory judgments in FOIA cases only "where a plaintiff has shown that an agency engaged in a pattern or practice of delayed disclosure and that it is possible the violations will recur with respect to the same requesters." *Navigators Ins. Co. v. Dep't of Justice*, 155 F. Supp. 3d 157, 168 (D. Conn. 2016) (collecting cases); *see also Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 259 (D.D.C. 2017) ("FOIA does not create a cause of action for an agency's untimely response to a FOIA request beyond the ability to seek an injunction from the district court." (internal quotation marks and citation omitted)). Here, as explained above, IRAP has not alleged and cannot plausibly allege a pattern and practice claim, *see supra* Section I.C, and thus, IRAP cannot obtain declaratory relief that USCIS violated FOIA by failing to search WRAPS for J.D.'s refugee case file.

Nor would the declaratory relief sought by IRAP "serve a useful purpose in clarifying and settling the legal relations in issue." *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991); *see also Navigators Ins. Co.*, 155 F. Supp. 3d at 168-69 (concluding that declaratory relief in FOIA case was inappropriate where it would provide "no 'implications for practical enforcement upon the parties'" (quoting *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 415 F. App'x 264, 267 (2d Cir. 2011) (summary order)). First, IRAP has already received the requested records, and can challenge DOS's application of exemptions to those records through the DOS administrative process or, if necessary, a lawsuit against DOS. Second, WRAPS is a DOS database that is indisputably owned and maintained by DOS, and the refugee case files in WRAPS include records that are generated by DOS (or other agencies, governments, or organizations) and would not typically be accessed by USCIS during its refugee adjudication process. Third, WRAPS will soon be decommissioned and obsolete for refugee case processing. The relief that IRAP seeks—a judicial declaration that USCIS violates FOIA if it declines to search WRAPS in response to a FOIA request—would be inappropriate under these circumstances.

## CONCLUSION

For the reasons set forth above and in USCIS's opening brief, the Court should dismiss this action for lack of subject matter jurisdiction and deny IRAP's motion for partial summary judgment.

Dated: April 7, 2021
        New York, New York

                                Respectfully submitted,

                                AUDREY STRAUSS
                                United States Attorney for the
                                Southern District of New York

                        By:     */s/ Danielle J. Levine*
                                DANIELLE J. LEVINE
                                Assistant United States Attorney
                                86 Chambers Street, 3rd Floor
                                New York, New York 10007
                                Tel.:  (212) 637-2689
                                E-mail: danielle.levine@usdoj.gov