```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/22/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
INTERNATIONAL REFUGEE ASSISTANCE      :
PROJECT, INC.,                        :
                                      :          20-CV-4284 (RWL)
                   Plaintiff,         :
                                      :
       - against -                    :      **DECISION & ORDER:**
                                      :  **MOTION TO DISMISS AND MOTION**
UNITED STATES CITIZENSHIP AND         :      **FOR SUMMARY JUDGMENT**
IMMIGRATION SERVICES,                 :
                                      :
                   Defendant.         :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff International Refugee Assistance Project ("IRAP") has sued Defendant United States Citizenship and Immigration Services ("USCIS") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). IRAP challenges USCIS's alleged policy of claiming that it has no records responsive to FOIA requests for records related to refugee resettlement applications. More specifically, IRAP challenges USCIS's failure to search for any such records in the Worldwide Refugee Admissions Processing System ("WRAPS"), which USCIS utilizes in adjudicating resettlement applications.

This case arises in the context of IRAP's advocacy on behalf of its client, J.D.,[1] an Afghan citizen who sought relocation to the United States in order to avoid persecution by the Taliban as a result of his status as a humanitarian worker. USCIS denied J.D.'s application for resettlement. Through IRAP, J.D. requested a discretionary review of USCIS's denial. His request remains pending. To prepare for the discretionary review, IRAP filed FOIA requests with USCIS and the United States Department Of State

---

[1] The Court uses an acronym to preserve anonymity.

1

("DOS"), requesting records related to J.D.'s refugee resettlement application.  DOS informed IRAP that some or all of the requested records originated with USCIS, but USCIS claimed it had no responsive records.  This case ensued, alleging that USCIS's response was part of its policy of claiming that it has no records responsive to requests for refugee resettlement applications and refusing to search WRAPS for those records.

After this case was filed, DOS responded to the separate FOIA request that IRAP had submitted to DOS.  DOS represents that it disclosed all records responsive to IRAP's request.  A number of those records are redacted, allegedly pursuant to various FOIA exemptions.  USCIS has moved to dismiss, alleging that DOS's disclosure moots this case.  IRAP opposes the motion to dismiss and moves for partial summary judgement on the issue of whether USCIS failed to conduct an adequate search.

For the reasons explained below, USCIS's motion to dismiss is DENIED and IRAP's motion for partial summary judgment is GRANTED.

## BACKGROUND[2]

### A.     Refugee Resettlement Applications

Individuals outside of the United States seeking admission as refugees pursuant to § 207 of the Immigration And Nationality Act ("INA") are processed through the United

---

[2] The facts are drawn from the following documents submitted by USCIS and IRAP.  In support of its motion to dismiss, USCIS submitted the "Declaration of Hillary E. Ingraham," dated January 22, 2021 ("Ingraham Decl.") (Dkt. 31); the "Declaration of Eric F. Stein," dated January 22, 2021, along with exhibits ("Stein Decl.") (Dkt. 32); and the "Declaration of Terri White," dated January 22, 2021, along with exhibits ("White Decl.") (Dkt. 33).  In opposition to USCIS's motion to dismiss and in support of its motion for summary judgment, IRAP submitted the "Declaration of Sara Gomez," dated March 3, 2021, along with exhibits ("Gomez Decl.") (Dkt. 42); the "Declaration of Stephen Poellot," dated March 3, 2021, along with exhibits ("Poellot Decl.") (Dkt. 43); the "Declaration of Emily Haverkamp," dated March 3, 2021 ("Haverkamp Decl.") (Dkt. 44); and IRAP's Rule 56.1 Statement of Undisputed Facts ("IRAP 56.1") (Dkt. 45).  In further support of its motion to

States Refugee Admissions Program ("USRAP").  (Ingraham Decl. ¶ 3.)  DOS and USCIS collaborate to manage USRAP.  (Ingraham Decl. ¶ 4.)

Among other responsibilities, DOS, through its Resettlement Support Centers ("RSCs") located around the world, is responsible for the administrative and processing functions of USRAP.  (Ingraham Decl. ¶ 4.)  As part of its responsibilities, DOS owns and maintains WRAPS, which is an electronic refugee resettlement case management system that facilitates the processing and tracking of refugee applicants as they move through the required refugee processing steps until arrival in the United States.  (Ingraham Decl. ¶ 5.)  DOS's RSCs administratively manage WRAPS, creating a new case in WRAPS whenever a refugee is referred to USRAP and entering new information into WRAPS as the case progresses, including records generated by USCIS refugee officers during the

---

dismiss and in opposition to IRAP's motion for summary judgment, USCIS also submitted the "Declaration of Joanna Ruppel," dated April 7, 2021 ("Ruppel Decl.") (Dkt. 49); the "Supplemental Declaration of Hilary E. Ingraham," dated April 7, 2021 ("Supp. Ingraham Decl.") (Dkt. 50); the "Supplemental Declaration of Terri White," dated April 7, 2021 ("Supp. White Decl.") (Dkt. 51); and USCIS's Response to Plaintiff's Local Rule 56.1 Statement ("USCIS 56.1").

USCIS asks this Court to ignore IRAP's 56.1 in its entirety because motions for summary judgment in FOIA litigation can generally be decided based on agency declarations, and because IRAP's 56.1 allegedly violates Rule 56.1 because it contains statements immaterial to the questions presented, inadmissible legal conclusions, unauthenticated hearsay statements, and other allegations that are non-factual or lack admissible evidentiary support.  (USCIS 56.1 at 1-2.)  The Court declines USCIS's invitation to ignore IRAP's 56.1 in their entirety, instead focusing on the facts that are material to the questions presented, supported by appropriate evidentiary support, and undisputed by USCIS.  The Court notes that USCIS purports to "dispute" some facts, only to offer additional information that contextualizes those facts but does not dispute them.  In those instances, the Court incorporates the additional information provided by USCIS where material.  The Court notes some genuine disputes between the parties in its recitation of the facts, but none are material to the questions presented.

refugee adjudication process, as well as any USCIS decisional documents, as discussed below.[3]  (Ingraham Decl. ¶ 6.)

When a person first applies for refugee status and thus eligibility to resettle in the United States, DOS's Bureau Of Population, Refugees, And Migration ("PRM") determines if the refugee meets certain basic requirements.  (USCIS 56.1 ¶ 2.)  If PRM determines that the applicant meets those basic requirements, USCIS's role in USRAP comes into play.  (USCIS 56.1 ¶ 2.)

USCIS is a component agency of the United States Department Of Homeland Security ("DHS") and is ultimately responsible for adjudicating applications for refugee status and determining if the applicant should be permitted to resettle in the United States. (USCIS 56.1 ¶ 1; IRAP 56.1 ¶ 1.)  The adjudication process includes determining whether the applicant meets the legal requirements for admission as a refugee, assessing whether anything renders the applicant ineligible, and reviewing relevant security checks.  (USCIS 56.1 ¶ 2.)

USCIS requires applicants to submit an application using a USCIS Form I-590 with supporting documentation, as well as biometric data including fingerprints, photographs, and signatures, which are used for security and background checks.  (USCIS 56.1 ¶ 7; IRAP 56.1 ¶ 7.)  USCIS also requires all applicants ages 14 years and older to sit for an interview with a USCIS officer and takes notes on those interviews.  (USCIS 56.1 ¶ 8; IRAP ¶ 8.)

---

[3] Some portion of the administrative management of WRAPS is handled by a private contractor, but the facts submitted by the parties on that point are not material to the issues before the Court.

**B.     WRAPS**

WRAPS is the database of information used by USCIS in deciding an applicant's case.  (USCIS 56.1 ¶ 36; IRAP ¶ 36.)  WRAPS contains the refugee application form, supporting documents, results of security and background checks, certain correspondence pertaining to the applicant, and any records generated by USCIS refugee officers during the refugee adjudication process, including interview notes and decision documents.  (USCIS 56.1 ¶¶ 37, 39, 40, 41; IRAP 56.1 ¶ 37, 39, 40, 41.)  Additional information resides in WRAPS pertaining to an applicant that is not "used or required by USCIS in adjudicating a refugee application."  (USCIS 56.1 ¶¶ 36, 37.)  For the purposes of this decision, the term "relevant information in WRAPS" refers to all information in WRAPS except for the information not used or required by USCIS in adjudicating a refugee application.

USCIS relies on the relevant information in WRAPS to access security risks, make eligibility determinations, and ultimately decide applications.  (USCIS 56.1 ¶ 48; IRAP 56.1 ¶ 48.)  USCIS can digitally approve a refugee application directly in WRAPS. (USCIS 56.1 ¶ 49; IRAP 56.1 ¶ 49.)  When refugee officers decide to reject an application, they make notes to DOS's RSCs explaining the reason that the case is not being approved; and those notes are uploaded to the case file in WRAPS.  (USCIS 56.1 ¶ 50; IRAP 56.1 ¶ 50.)

USCIS also uses WRAPS to store records of its decisions.  (USCIS 56.1 ¶ 51; IRAP 56.1 ¶ 51.)  All USCIS I-590 decision information is also stored in a paper file maintained by DOS's RSCs until the file is shipped to the USCIS National Records Center and becomes an "A-File."  (USCIS 56.1 ¶ 51.)

USCIS staff can print records from WRAPS.  (USCIS 56.1 ¶ 53; IRAP ¶ 53.)  On occasion, when foreign governments request certain information from USCIS outside of the FOIA process, analysts from the USCIS National Records Center will consult various sources, including WRAPS, to create consolidated responses to the foreign partners' requests, which may include information from WRAPS such as USCIS Form I-590s, Decision Letters, and USCIS Worksheet interview notes.  (USCIS 56.1 ¶ 57.)

USCIS publicly states that individuals may seek access to their USCIS records by filing FOIA requests.  (USCIS 56.1 ¶ 61, Gomez Decl., Ex. 1, at 26.)  If a person finds inaccurate information in the records they receive through FOIA, they may visit a local USCIS Field Office to identify and amend inaccurate records.  (USCIS 56.1 ¶ 62.)  DOS's RSCs make the correction directly in WRAPS.[4]  (USCIS 56.1 ¶ 62.)

As USCIS repeatedly notes, although USCIS information and documents are stored in WRAPS, and USCIS utilizes information and documents stored in WRAPS to adjudicate refugee resettlement applications, DOS's RSCs are responsible for actually uploading all information into WRAPS and, with the exception of being able to digitally approve a refugee application directly in WRAPS, USCIS officers' access to WRAPS is "read-only" and "based on operational need."  (*See, e.g.*, USCIS 56.1 ¶¶ 26, 49.)

---

[4] Paragraph 63 of USCIS's 56.1 says that "PRM's overseas partners" make the corrections in WRAPS.  (USCIS 56.1 ¶ 63.)  There is some variation in description of the relationship between PRM and the RSCs across the various declarations submitted by USCIS.  But based on a description of RPC as "within "PRM" (Ingraham Decl. ¶ 1), a description of RPCs as a part of DOS "located around the world" (Ingraham Decl. ¶ 4), and USCIS's repeated assertion that the RPCs manage the information in WRAPS, it seems clear that the PRM's overseas partners mentioned in Paragraph 63 refer to DOS's RPCs or the independent contractors they utilize.

In sum, WRAPS is a DOS database administratively managed by DOS RSCs but which is used extensively by USCIS, including to store documents that are generated by USCIS, to adjudicate refugee resettlement applications, to print information from WRAPS, and to generate responses to requests for information from foreign governments outside of the FOIA context.

USCIS is quick to note that DOS is in the process of retiring WRAPS. (USCIS 56.1 ¶ 28; Supp. Ingraham Decl. ¶ 15.) DOS expects to fully decommission WRAPS "by the end of 2021." (USCIS 56.1 ¶ 28; Supp. Ingraham Decl. ¶ 15.) WRAPS will be replaced by two systems: a DOS system called START and a USCIS system called Global. (USCIS 56.1 ¶ 28; Supp. Ingraham Decl. ¶ 15-17.) Certain data in START will automatically be sent to Global through electronic interface, and all of the information that USCIS needs to adjudicate refugee applications will be available in Global. (Supp. Ingraham Decl. ¶ 17.) USCIS will input its own information needed to adjudicate refugee applications into Global, such as interview notes and all final adjudicative decisions. (USCIS 56.1 ¶ 28.) Once a final decision has been made on a case, Global will communicate that decision to DOS to complete processing. (USCIS 56.1 ¶ 28.) DOS will not have direct access to Global. (Supp. Ingraham Decl. ¶ 17.) Once WRAPS is decommissioned, USCIS "will lose access to WRAPS," but DOS will preserve a copy of WRAPS for a period of time after it is decommissioned. (Supp. Ingraham Decl. ¶ 17.)

## C.    IRAP's Representation Of Applicants For Refugee Status

IRAP is a nonprofit organization that, among other things, provides direct legal services to refugees going through USCIS's resettlement application process. (USCIS 56.1 ¶ 58; IRAP 56.1 ¶ 58.) When a refugee resettlement application is denied, an applicant may seek discretionary review by USCIS. (USCIS 56.1 ¶ 14; IRAP 56.1 ¶ 14.)

One component of IRAP's direct legal services work is helping people request discretionary review by USCIS.  (USCIS 56.1 ¶ 59; IRAP 56.1 ¶ 59.)  To better inform IRAP's advocacy on behalf of clients seeking discretionary review, IRAP generally submits FOIA requests to USCIS seeking the client's case file.  (USCIS 56.1 ¶ 60; IRAP 56.1 ¶ 60.)

IRAP attests that, since 2017, IRAP and its pro bono partners have received over 20 "no records" responses from USCIS and, because of USCIS's practice of refusing to search WRAPS for responsive records, IRAP is forced to file its requests for discretionary review of its clients refugee resettlement applications without the benefit of its clients refugee case files.[5]  (IRAP 56.1 ¶¶ 64, 68.)

IRAP acknowledges that it also submits requests to DOS in addition to USCIS.  (*See* USCIS 56.1 ¶ 67; IRAP 56.1 ¶ 67.)  IRAP states, however, that DOS often responds to IRAP FOIA requests merely by directing IRAP to USCIS on the ground that some or all of the requested documents originated with USCIS; and, even when DOS does respond substantively, it generally takes years to complete just its initial search.[6]  (IRAP 56.1 ¶¶ 66-67.)

IRAP will continue its mission beyond this individual case.  It thus will represent people in requests for discretionary review of their denial of refugee resettlement

---

[5] USCIS takes the position that it is unable to respond to these statements because the specific requests and names of requestors were not identified.  (USCIS 56.1 ¶¶ 64, 68.)

[6] USCIS disputes the first assertion, "as evidenced by DOS's release of records in this case" and, in response to the second assertion, notes that FOIA provides a mechanism for seeking judicial review of an agency's failure to respond to requests in a timely manner.  (USCIS 56.1 ¶ 66-67.)

applications and will continue to submit FOIA requests for its clients' case files from USCIS.  (USCIS ¶¶ 56.1 70-71; IRAP 56.1 ¶¶ 70-71.)

**D.     Administrative And Procedural History**

    **1.     IRAP'S FOIA Requests To USCIS**

IRAP submitted the FOIA request that gave rise to this case in February 2018.  (USCIS 56.1 ¶ 73; IRAP 56.1 ¶ 73.)  IRAP requested from USCIS "[a]ll documents and information pertaining to [J.D.'s] application … for USRAP refugee resettlement as contained in the records of the Refugee Processing Center, including the full [WRAPS] database file."  (USCIS 56.1 ¶ 73.)

By letter dated March 1, 2018, USCIS responded to IRAP's request, stating that it had searched two different databases that IRAP had not asked be searched – the Central Index System ("CIS") and the Computer Linked Application Information Management System ("CLAIMS") – and had identified no responsive records.  (USCIS 56.1 ¶¶ 76-77; IRAP 56.1 ¶¶ 76-77; White Decl. ¶ 8.)  USCIS also noted that if IRAP had reason to believe that responsive records existed and provided additional information, USCIS would conduct another search.  (USCIS 56.1 ¶ 78; IRAP 56.1 ¶ 78.)

By letter dated April 9, 2018, IRAP submitted additional information to USCIS and reiterated its request that USCIS search WRAPS.  (USCIS 56.1 ¶¶ 79-80; IRAP 56.1 ¶¶ 79-80; White Decl., Ex. C.)  IRAP explained that it sought all documents, records, or information relating to the denial of its client's application for refugee status that were in the possession, custody, or control of USCIS.  (USCIS 56.1 ¶ 81; IRAP 56.1 ¶ 81.)

In its response dated May 1, 2018, USCIS once again asserted that it had searched the two databases that IRAP did not ask it to search – CIS and CLAIMS – and had identified no responsive records.  (USCIS 56.1 ¶ 82; IRAP 56.1 ¶ 82.)  USCIS also

once again invited IRAP to provide additional information for another search.  (USCIS 56.1 ¶ 83; IRAP 56.1 ¶ 83.)

On May 10, 2018, USCIS sent a second reply to IRAP's April 2018 letter, asserting that the Alien Registration Number that IRAP had provided for its client did not belong to him, but once again stating that it had searched CIS and CLAIMS and identified no responsive records, and once again inviting IRAP to submit additional information for another search.  (USCIS 56.1 ¶ 85; IRAP 56.1 ¶ 85.)

By letter dated July 23, 2018, IRAP filed an administrative appeal of the adverse determinations in USCIS's May 1 and May 10, 2018 letters.  IRAP contended, among other things, that USCIS was obligated to search WRAPS for responsive records, as requested, but had offered no indication that it had done so.  (USCIS 56.1 ¶ 86; IRAP 56.1 ¶ 86; White Decl., Ex E.)

On July 26, 2018, USCIS granted IRAP's appeal and remanded the request to USCIS's National Records Center for a further search.  (USCIS 56.1 ¶ 87; IRAP 56.1 ¶ 87.)  By letter dated December 11, 2018, USCIS stated that it had once again searched CIS, as well as another database that IRAP had not asked it to search – the Person Centric Query System – and had identified no responsive records.  (USCIS 56.1 ¶ 88; IRAP 56.1 ¶ 88.)  For the first time, USCIS advised IRAP that USCIS "believe[d] the records [IRAP was] seeking would be under the purview of [DOS]."  (USCIS 56.1 ¶ 89; IRAP 56.1 ¶ 89.)

On March 11, 2019, IRAP appealed USCIS's December 11, 2018 decision and reiterated its request that USCIS search WRAPS.  (USCIS 56.1 ¶ 91; IRAP 56.1 ¶ 91.) On March 13, 2019, USCIS affirmed its "no records" response to IRAP's FOIA request.

10

(USCIS 56.1 ¶ 92; IRAP 56.1 ¶ 92.)  USCIS has since admitted that it did not search WRAPS in response to IRAP's request.  (USCIS 56.1 ¶ 94.)  To date, USCIS has produced no records in response to IRAP's request.  (USCIS 56.1 ¶ 95; IRAP 56.1 ¶ 95.)

Accordingly, on June 5, 2021, IRAP filed the present lawsuit challenging USCIS's policies of (1) refusing to search WRAPS in response to FOIA requests for records related to refugee resettlement applications, and (2) claiming to have no records related to the refugee resettlement applications that it adjudicates.  (Compl. ¶¶ 1, 62.[7])  As relief, USCIS requested the Court to (1) declare that USCIS had violated FOIA by unlawfully withholding the requested records; (2) order USCIS to conduct a reasonable search for the requested records and disclose them to IRAP as soon as practicable; (3) review any and all redactions or withholdings; (4) award IRAP costs and attorney's fees as provided in 5 U.S.C. § 552(a)(4)(E); and (5) grant other such relief as the Court may deem just and proper.  (Compl., Prayer For Relief, ¶¶ 1-4.)  On July 22, 2020, the parties consented to this Court's jurisdiction for all purposes.  (Dkt. 15.)

### 2.    IRAP's FOIA Request To DOS

The same month that IRAP submitted its initial request for records to USCIS – February 2018 – it submitted a request to DOS for the same information.  (Stein Decl. ¶ 5-6; White Decl. ¶ 5.)  DOS initially informed IRAP that some or all of the requested records originated with USCIS and invited it to file a FOIA request with USCIS.  (Stein Decl., Ex. B.)  On August 24, 2020 – more than two years after USCIS submitted its request, and two months after IRAP filed the current lawsuit over USCIS's failure to produce responsive records – DOS responded to IRAP's request, stating that it had

---

[7] "Compl." refers to IRAP's "Complaint For Declaratory And Injunctive Relief For Violation Of The Freedom Of Information Act, 5. U.S.C. 552 et seq." (Dkt. 1).

identified all records responsive to the request, and released those records.  (Stein Decl. ¶ 7 & Ex. C.)  DOS released three records, totaling twenty pages.  (Stein Decl. ¶ 7.)  All three records were redacted in part, allegedly pursuant to "one or more FOIA exemptions."  (Stein Decl. ¶ 7.)

On November 20, 2020, IRAP administratively appealed certain aspects of DOS's August 24, 2020 response.  (Stein Decl. ¶ 9.)  On January 13, 2021, DOS informed IRAP that it had identified additional responsive records and released those records.  (Stein Decl. ¶ 11.)  The second disclosure included 55 additional records, totaling 263 pages.  (Stein Decl. ¶ 11.)  DOS disclosed 12 of those records in full, the other 43 contained redactions, allegedly pursuant to "certain of FOIA's enumerated exemptions."  (Stein Decl. ¶ 11.)  IRAP asserts that three of those records were redacted in full.  (Poellot Decl. ¶ 23.)  USCIS contests that characterization.  (USCIS 56.1 ¶ 97.)

DOS now represents that it has released all non-exempt records responsive to IRAP's FOIA request and all records pertaining to J.D. that are maintained in WRAPS. (Stein Decl. ¶ 12.)

### 3.    Pending Motions

After DOS's January 13, 2021 response to IRAP's FOIA request, USCIS moved to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that DOS's response to IRAP's FOIA request renders this case moot.  IRAP opposed USCIS's motion to dismiss, arguing that DOS's response to its separate FOIA request does not moot this case because the response of one agency cannot moot a case about an unfulfilled FOIA request to another agency and, even if it could, there are still numerous disputes between the parties, including whether USCIS conducted an adequate search under FOIA, whether certain records contained in

WRAPS are USCIS "agency records" within the meaning of FOIA, and whether USCIS has a policy or practice of violating FOIA by refusing to search WRAPS. USCIS also moved for summary judgment on the issue of whether USCIS conducted an adequate search for records.

USCIS submitted a reply to IRAP's opposition to its motion to dismiss, as well as an opposition to USCIS's motion for summary judgment, but did not cross-move for summary judgment. IRAP then submitted its reply to USCIS's opposition to its motion for summary judgment. Both motions are now fully briefed and before this Court for adjudication.

### FOIA

FOIA was enacted in 1966 "to improve public access to information held by government agencies." *Pierce & Stevens Chemical Corp. v. United States Consumer Product Safety Commission*, 585 F.2d 1382, 1384 (2d Cir. 1978). In 1974, Congress amended FOIA, "evinc[ing] an increasing concern over the timeliness of disclosure, recognizing that delay in complying with FOIA requests may be tantamount to denial." *American Civil Liberties Union v. Department Of Defense*, 339 F. Supp.2d 501, 504 (S.D.N.Y. 2004) (internal quotation marks omitted).

FOIA "expresses a public policy in favor of disclosure so that the public might see what activities federal agencies are engaged in," *A. Michael's Piano, Inc. v. Federal Trade Commission*, 18 F.3d 138, 143 (2d Cir.1994), and is intended to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," *National Labor Relations Board v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S. Ct. 2311, 2327 (1978).

In service of those ideals, "FOIA provides that federal agencies in possession of records and related materials must make them available to the general public upon request." *Lawyers Committee For Human Rights v. Immigration And Naturalization Service*, 721 F. Supp. 552, 560 (S.D.N.Y. 1989) (citing 5 U.S.C. § 552(b)(2)-(9)).  When an agency receives a request for records, it must "(1) conduct an adequate search using reasonable efforts, (2) provide the information requested, unless it falls within a FOIA exemption, and (3) provide any information that can be reasonably segregated from the exempt information." *New York Times Co. v. United States Department Of Justice*, 390 F. Supp.3d 499, 511 (S.D.N.Y. 2019).

While there are certain statutory exemptions, they "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Department Of The Interior And Bureau Of Indian Affairs v. Klamath Water Users Protective Association*, 532 U.S. 1, 8, 121 S. Ct. 1060, 1065 (2001) (citation omitted).  To the contrary, "FOIA favors broad disclosure," *Sorin v. United States Department Of Justice*, 280 F. Supp.3d 550, 557 (S.D.N.Y. 2017), *aff'd*, 758 F. App'x 28 (2d Cir. 2018), and any doubts about the applicability of exemptions are to be "resolved in favor of disclosure," *Michael's Piano*, 18 F.3d at 143.

When a requestor believes that an agency has improperly withheld agency records, FOIA permits the requestor to file suit in federal court.  5 U.S.C. § 552(a)(4)(B). FOIA gives district courts jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld."  *Id.*, *United States Department Of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S. Ct. 2841, 2846 (1989).  It is also well established that, where an agency has not demonstrated that

it conducted an adequate search, district courts may order it to do so.  *NAACP Legal Defense & Education Fund, Inc. v. Department Of Justice*, 463 F. Supp.3d 474, 489 (S.D.N.Y. 2020); *National Security Counselors v. Central Intelligence Agency*, 898 F. Supp.2d 233, 265-66 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020); *Looney v. Walters-Tucker*, 98 F. Supp.2d 1, 3 (D.D.C. 2000), *aff'd per curiam sub nom. Looney v. Federal Deposit Insurance Corporation*, 2 F. App'x 8 (D.C. Cir. 2001)

**Motion To Dismiss**

The Court first addresses USCIS's motion to dismiss and will then address IRAP's motion for partial summary judgment.

**A.    Legal Standards**

**1.    Rule 12(b)(1)**

On a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it."  *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).  In a FOIA case, subject matter jurisdiction – a court's statutory power to adjudicate the case – "is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records."  *Tax Analysts*, 492 U.S. at 142, 109 S. Ct. at 2846 (internal quotation marks omitted).

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transportation System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In deciding a Rule 12(b)(1) motion to dismiss, the Court "'must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'"  *Morrison*, 547 F.3d at 170 (quoting *Natural Resources Defense*

*Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)).  The court also "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *J.S. Ex Rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings").

### 2.    Mootness

"Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'"  *Chafin v. Chafin*, 568 U.S. 165, 171, 133 S. Ct. 1017, 1023 (2013); *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S. Ct. 1704, 1705-06 (1974); *see* U.S. Const. art. III, § 2.  Under the case-or-controversy limitation, the federal courts "may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." *Chafin*, 568 U.S. at 171, 133 S. Ct. at 1023 (internal quotation marks and brackets omitted).  Accordingly, to have "standing" to bring a lawsuit, "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* at 172, 133 S. Ct. at 1023; *see also Spokeo, Inc. v. Robins*, __ U.S. __, __, 136 S. Ct. 1540, 1547 (2016).

"The case-or-controversy requirement subsists through all stages of federal judicial proceedings," so that for a federal court to have continued jurisdiction, "the parties must continue to have a personal stake in the ultimate disposition of the lawsuit."  *Chafin*, 568 U.S. at 172, 133 S. Ct. at 1023 (internal quotation marks omitted).  Accordingly, a case becomes "moot" – and a federal court no longer has jurisdiction over the matter – "when the issues presented are no longer live or the parties lack a legally cognizable

interest in the outcome." *Id.*, 133 S. Ct. at 1023 (internal quotation marks omitted); *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951 (1969); *see Fox v. Board of Trustees of State University of New York*, 42 F.3d 135, 140 (2d Cir. 1994) ("When a case becomes moot, the federal courts lack subject matter jurisdiction over the action" (internal quotation marks and brackets omitted)).

A case becomes moot, however, "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298, 307, 132 S. Ct. 2277, 2287 (2012) (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 307-08, 132 S. Ct. 2277 (internal quotation marks and brackets omitted).

Additionally, while the plaintiff bears the burden of proving standing (and subject matter jurisdiction more broadly), the defendant bears the burden with respect to mootness, and "[t]he burden of demonstrating mootness is a heavy one." *Los Angeles County. v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 1383 (1979) (internal quotation marks omitted); *Mhany Management, Inc. v. City Of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016); *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006) ("Despite their close family resemblance, there is a telltale distinction between the doctrines of standing and mootness. Whereas the party invoking federal jurisdiction bears the burden of proving that she has standing, the party raising a mootness defense has the burden of establishing the facts necessary to sustain that defense"). That is because standing "functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake," while, "by the

time mootness is an issue, the case has been brought and litigated," and thus abandoning the case "may prove more wasteful than frugal."  *Mhany*, 819 F.3d at 603 (internal quotation marks omitted).

## B.     Analysis

USCIS has not met its heavy burden of demonstrating that this case is moot.  That is so for three reasons.  First, disclosure by one agency does not moot a lawsuit against a different agency for the same records – not as a general principle of FOIA law and not in this case.  Second, even if USCIS could establish, as a general matter, that disclosure by one agency moots a lawsuit against another agency, it would not help USCIS here; because DOS's disclosure contains redactions, USCIS cannot establish that IRAP has received all of the requested records, and thus that no dispute remains between the parties even with respect to J.D.'s records.  And third, IRAP has adequately pleaded a policy-or-practice FOIA violation, which defeats mootness as to a specific request.  The Court discusses each reason in turn.

### 1.     Disclosure By One Agency Generally Does Not Moot A Lawsuit Against Another Agency After Litigation Has Commenced, And Has Not Done So Here

The Court starts by explaining why, under principles of mootness, disclosure by one agency generally does not moot a lawsuit against another agency for the same records and does not do so here.  Although neither party has identified any case directly on point, the Court discusses relevant Supreme Court precedent that it finds persuasive on the issue before the Court.  The Court then examines the cases that USCIS relies on in support of its assertion that disclosure by one agency can moot a lawsuit against another agency and explains why none establish the proposition for which USCIS cites

them.[8]  The Court concludes by discussing the policy considerations that militate against USCIS's proposition that a lawsuit against one agency is rendered moot by disclosure from another agency.  Throughout, the Court explains why DOS's disclosure of records does not moot IRAP's request to USCIS in the specific context of this case.

###### a.    Disclosure By A Separate Agency[9]

A case becomes moot when "the parties lack a legally cognizable interest in the outcome" and "it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Chafin*, 568 U.S. at 172, 133 S. Ct. at 1023 (internal quotation marks omitted); *Knox*, 567 U.S. at 307, 132 S. Ct. at 2287 (internal quotation marks omitted).  In a FOIA case, however, a plaintiff has "a cognizable interest in having a court determine whether the search for records was adequate," and "courts always have jurisdiction to determine the adequacy of a search."  *Brustein & Manasevit, PLLC v. United States Department Of Education*, 30 F. Supp. 3d 1, 5 (D.D.C. 2013) (internal quotation marks and brackets omitted); *Conservation Force v. Ashe*, 979 F. Supp. 90, 96 (D.D.C. 2013)

---

[8] USCIS relies extensively on cases from the D.C. Circuit and the district courts in that circuit.  The reason is clear.  While no courts have directly addressed some of the issues before the Court, the D.C. Circuit and its district courts have come the closest.  That is not surprising given that courts in the D.C. Circuit, unique among all circuits, have jurisdiction over all FOIA cases.  5 U.S.C. § 552(a)(4)(B).  With respect to FOIA law, the Second Circuit has evinced a willingness to look particularly to the D.C. Circuit.  *Roman v. National Sec. Agency*, No. 07-CV-4502, 2009 WL 303686, at *5 (E.D.N.Y. Feb. 9, 2009) (collecting cases), *aff'd*, 354 F. App'x 591 (2d Cir. 2009).  For those reasons, the Court discusses cases from the D.C. Circuit and examines each for its relative persuasiveness while mindful that they are not controlling.

[9] As discussed further below, the circumstances of this case – disclosure by a different agency than the one that is subject of the lawsuit – is distinct from the context of a proper referral, where one agency refers a request to another agency but remains ultimately responsible for fulfilling the request.  In that context, disclosure by the second agency is effectively disclosure by the agency to which the request was sent, not a "separate agency."  If USCIS had properly referred the requests at issue here, which it did not, the outcome may have been different.

(internal quotation marks omitted).  That is true even where the agency that is the subject of the litigation "has already produced the requested records."  *Brustein & Manasevit*, 30 F. Supp. 3d at 5; *Yonemoto v. Department Of Veterans Affairs*, 686 F.3d 681, 689 (9th Cir. 2012) ("A FOIA claim is not moot … if the agency produces what it maintains is all the responsive documents, but the plaintiff challenges whether the agency's search for records was adequate.  In that situation, there is still a live controversy regarding whether the agency is withholding records" (internal quotation marks and citations omitted), *overruled on other grounds*, *Animal Legal Defense Fund v. United States Food & Drug Administration*, 836 F.3d 987 (9th Cir. 2016)).

That principle stems from the grant of jurisdiction in FOIA itself.  FOIA requires "each agency" that receives a request to "make reasonable efforts to search for the records" and promptly disclose all non-exempt records; and it grants district courts jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(3)(A), (a)(3)(C), (a)(4)(B).  Courts have jurisdiction to order an adequate search because, where an agency has failed to conduct an adequate search, agency records may have been improperly withheld.  *National Security Counselors*, 898 F. Supp.2d at 265-66.[10]

---

[10] USCIS states without support that IRAP "is not challenging the scope or the reasonableness of the search conducted by DOS.  IRAP concedes that it has received its client's entire file maintained in WRAPS, with the exception of material that DOS determined to be exempt from disclosure."  (USCIS Reply at 6 n.3.)  IRAP responds that it "does not 'concede' that the State Department produced 'its entire file' because the State Department did no such thing."  (IRAP Reply at 8 n.5.)

In this case, IRAP challenges the adequacy of USCIS's search.  (Compl. ¶¶ 5, 50, 54-63, 65.)  USCIS does not seriously dispute the fact.  Notably, it does not cross-move for summary judgment on the issue.  Instead, it relies on an affidavit about DOS's search to assert that all non-exempt records have been released by DOS.  (Stein Decl.)  But the sufficiency of **DOS**'s production is not before the Court.  Indeed, USCIS argues vehemently that the propriety of DOS's redactions are not before the Court.  (IRAP Reply at 6-8.)

Contrary to USCIS's position, the issues presented in this case are still "live." *Chafin*, 568 U.S. at 171, 133 S. Ct. at 1023.  IRAP has a "legally cognizable interest" in, among other things, ensuring that no agency records are being improperly withheld due to an inadequate search.  *Id.*, 133 S. Ct. at 1023 (internal quotation marks omitted).  And it is possible for the Court to grant "effectual relief."  *Knox*, 567 U.S. at 307, 132 S. Ct. at 2287 (internal quotation marks omitted).  In fact, it is possible for the Court to grant the exact relief that IRAP seeks – compel USCIS to conduct an adequate search and disclose all responsive records and review the propriety of any withholdings or redactions. 5 U.S.C. § 552 (a)(4)(B) (district courts have jurisdiction to order disclosure of improperly withheld agency records); *National Security Counselors*, 898 F. Supp.2d at 265-66 (which includes reviewing adequacy of search); *Northwestern University v. United States Department Of Agriculture*, 403 F. Supp.2d 83, 86 (D.D.C. 2005) (and redactions).

Moreover, even if DOS conducted an adequate search, and that search were relevant, a search ordered by this Court on this date, conducted by USCIS, may yield additional records not produced by DOS for at least two reasons: (1) USCIS may identify agency records that DOS did not, and (2) more records responsive to IRAP's request may

be in WRAPS today than were in WRAPs when DOS completed its search on or about January 13, 2021.  The latter finds support in the record.

Between conducting its original search on or about August 24, 2020 and its final search on or about January 13, 2021, DOS found "additional files **added to [J.D.'s] case since the time [DOS] conducted the original search**."  (Stein Decl. ¶¶ 8, 11 (emphasis added).)  Drawing all reasonable inferences in IRAP's favor, *see Morrison*, 547 F.3d at 170, it is reasonable to assume that more records related to J.D. may have been added to WRAPS since January, which this Court can order disclosed.  There is thus a real possibility of additional "effectual relief" that this Court could grant.  *See Knox*, 567 U.S. at 307, 132 S. Ct. at 2287 (internal quotation marks omitted).

Outside of arguing that the original search was inadequate, that consideration would not give a plaintiff standing to sue an agency that has already responded to a request; otherwise a requestor would have an indefinite right to sue to compel subsequent searches.  But in the context of a lawsuit against a different, non-responsive agency, filed before any disclosure was made by either agency, the consideration is relevant to whether there is a live dispute between the parties and any effectual relief the Court can grant.

For those reasons, disclosure by one agency generally does not moot a lawsuit against another agency and does not do so here.  As will be discussed below, the cases that USCIS cites for the contrary proposition do not support that position.  First, however, the Court will discuss the Supreme Court's decision in *Tax Analysts*, which is persuasive on the issue before the Court.

b.      *Tax Analysts*

Neither party cites to any case that is directly on point with this one, and the Court is not aware of any.  The Supreme Court's decision in *Tax Analysts*, however, supports the conclusion that disclosure by one agency cannot moot a lawsuit against another agency for the same records.  In *Tax Analysts*, a magazine that published summaries of recent federal court tax decisions (Tax Analysts) sued the Tax Division of the United States Department Of Justice under FOIA, seeking copies of district court decisions received by the Tax Division.  492 U.S. at 140, 109 S. Ct. at 2845.  The district court dismissed Tax Analysts' case based on lack of subject matter jurisdiction (not framed as mootness), because the decisions were already available from their primary source – the district courts.  *Id.* at 140-41, 109 S. Ct. at 2845-46.

The D.C. Circuit reversed the district court, and the Supreme Court affirmed the reversal.  *Id.* at 141, 109 S. Ct. at 2846.  Before the Supreme Court, the DOJ argued that the records were not "withheld" because they were publicly available.  *Id.* at 149, 109 S. Ct. at 2850.  The Supreme Court disagreed, noting that "Congress used the word withheld in its usual sense," which clearly encompassed refusing to grant access to records in an agency's possession, even if those records are publicly available.  *Id.* at 149-50, 109 S. Ct. at 2850-51 (internal quotation marks omitted).  The Court's conclusion that an agency improperly withholds records by refusing to produce them even if they are publicly available belies any suggestion that USCIS is not liable under FOIA for withholding records that are available elsewhere – in this instance, where another agency, DOS, has allegedly produced them.

In finding that the withholding was "improper," the Court noted that, in enacting FOIA, Congress intended to curb unbridled agency discretion and close loopholes

allowing agencies to deny legitimate access to information.  *Id.* at 150, 109 S. Ct. at 2851.

To that end, the Court explained:

> Congress formulated a system of clearly defined exemptions
> to the FOIA's otherwise mandatory disclosure requirements.
> An agency must disclose agency records to any person under
> § 552(a), unless they may be withheld pursuant to one of the
> nine enumerated exemptions listed in § 552(b).  Consistent
> with the Act's goal of broad disclosure, these exemptions
> have been consistently given a narrow compass.  More
> important for present purposes, the exemptions are explicitly
> exclusive. …  It follows from the exclusive nature of the
> § 552(b) exemption scheme that agency records which do not
> fall within one of the exemptions are 'improperly' withheld.

*Id.* at 150-51, 109 S. Ct. at 2851 (internal quotation marks and citations omitted).

Despite Congress's clear intent to circumscribe the exceptions to disclosure, DOJ

argued that FOIA also evinced a desire "to avoid redundant disclosures."  *Id.* at 152, 109

S. Ct. at 2852.  That argument was based on the fact that subsection (a)(3) of FOIA states

that agencies need not disclose certain materials in response to requests when the

agency has already made those materials available pursuant to subsections (a)(1) and

(a)(2) of FOIA, which require proactive, public disclosure of certain records.  *Id.*, 109 S.

Ct. at 2852.  The Court rejected that argument, explaining:

> The disclosure requirements set out in subsections (a)(1) and
> (a)(2) are carefully limited to situations in which the requested
> materials have been previously published or made available
> by the agency itself.  ***It is one thing to say that an agency
> need not disclose materials that it has previously
> released; it is quite another to say that an agency need
> not disclose materials that some other person or group
> may have previously released*.  *Congress undoubtedly
> was aware of the redundancies that might exist when
> requested materials have been previously made
> available.  It chose to deal with that problem by crafting
> only narrow categories of materials which need not be, in
> effect, disclosed twice by the agency***.  If Congress had
> wished to codify an exemption for all publicly available
> materials, it knew perfectly well how to do so.  It is not for us

to add or detract from Congress' comprehensive scheme, which already 'balances, and protects all interests' implicated by Executive Branch disclosure.

*Id.* at 152-53, 109 S. Ct. at 2852 (emphasis added).

While *Tax Analysts* was a case about subject matter jurisdiction (not specifically mootness[11]), and did not involve two agencies both disclosing the same records in response to requests (but rather publication by a non-agency and a request to a separate agency), the Court's discussion of the exclusivity of the enumerated exemptions, its dismissal of concerns about "redundant disclosure," and the distinction it draws between previous disclosures by the defendant agency versus "some other person or group" (in that case, the district courts), is quite relevant to the questions presented here.

In asking this Court to find that disclosure by one agency moots already-filed lawsuits against other agencies, USCIS effectively invites this Court to find a new exception to the agency's obligations under FOIA. The Court declines to do so. FOIA requires "each agency" to respond to "any request" with only nine exclusive exemptions, which are to be construed narrowly. *Id.* at 150-51, 109 S. Ct. at 2851; 5 U.S.C. § 552(1)(3)(A).

Despite *Tax Analysts*' rejection of the DOJ's argument that FOIA does not require "redundant disclosures," USCIS argues to the contrary that separate agencies should not

---

[11] Although the case did not discuss mootness, the Court would have lacked jurisdiction if the controversy had been mooted. Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244 (2006). Accordingly, it is fair to infer that had the Court considered the issue moot, it would have acted on that conclusion whether the parties had raised it or not.

be forced "to process duplicate records."  (USCIS Reply at 5.[12])  In an attempt to distinguish *Tax Analysts*, USCIS focuses on the fact that, in *Tax Analysts*, the records became "publicly available through a non-agency source[, the district courts]."  (USCIS Reply at 5.)  USCIS thus points to two distinctions: (1) previous disclosure by the district courts versus an agency; and (2) previous public disclosure versus disclosure in response to a FOIA request.

USCIS offers no argument why the first distinction makes a difference, and the Court sees none.  With respect to the second distinction, one could argue that disclosure in response to a FOIA request, rather than public disclosure made pursuant to an independent obligation,[13] heightens concerns about "redundant disclosures."  That is, the agency that was required to publish the documents would have had to disclose them anyway, whereas responding to a FOIA request requires distinct, additional resources. *Tax Analysts*, however, seems unconcerned with that consideration – the Court required the defendant agency to use its resources to disclose records that had already been publicly disclosed and noted Congress' awareness that redundancies "might exist when requested materials have been previously made available."  492 U.S. at 152, 109 S. Ct. at 152 ("Congress undoubtedly was aware of the redundancies that might exist when requested materials have been previously made available").  If anything, a distinguishing feature of *Tax Analysts* indicates that the Court's concerns and conclusions should apply

---

[12] "USCIS Reply" refers to USCIS's "Combined Memorandum Of Law In Further Support Of Its Motion To Dismiss For Lack Of Subject Matter Jurisdiction And In Opposition To Plaintiff's Motion For Partial Summary Judgment" (Dkt. 48).

[13] Disclosure of district court decisions is governed by the rules of the Judicial Conference Of The United States and various statutes and regulations.  *See Tax Analysts*, 492 U.S. at 137, 109 S. Ct. at 2844.

with even more force in the instant case.  In *Tax Analysts*, unlike in this case, the records at issue had already been disclosed publicly prior to the lawsuit being filed against the non-disclosing agency – a distinction that decidedly cuts in favor of IRAP because, when the question shifts from standing to mootness, the burden shifts from requiring plaintiff to establish standing to placing a heavy burden on defendant to demonstrate that "it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Knox*, 567 U.S. at 307, 132 S. Ct. at 2287 (internal quotation marks omitted); *Davis*, 440 U.S. at 631, 99 S. Ct. at 1383; *Mhany Management*, 819 F.3d at 603.

The Court thus finds that *Tax Analysts* compels the conclusion that disclosure by one agency does not moot a lawsuit against another agency.  The Court will now examine the cases that USCIS cites in support of the contrary proposition and show why they do not warrant any different result.

### c.    Cases Relied On By USCIS

In support of its position that disclosure by one agency can moot a lawsuit against another agency for the same records, USCIS relies on four categories of cases, all of which are materially distinguishable: (1) cases where the defendant agency – not a separate agency – produced the requested records; (2) cases where the plaintiff brought litigation against two agencies for the same records and courts applied *stare decisis* or the first-filed rule; (3) a D.C. Circuit case where one agency referred a request to another agency consistent with FOIA, and the records were produced prior to litigation; and (4) another D.C. Circuit case that found moot, with limited discussion, a FOIA lawsuit against

one agency because another agency had released the records prior to litigation.[14]   None of those cases are persuasive in the context of the present case.   The Court discusses each in turn.

> **i.      Cases Where The Defendant Agency Produced The Requested Records**

USCIS cites numerous cases that were held to be moot (or where the court ruled against the plaintiffs on the merits) because the defendant agency – not a separate agency – produced the requested records.   (USCIS Mem. at 10;[15] USCIS Reply at 8-10.) *See Offor v. United States Equal Employment Opportunity Commission*, 687 F. App'x 13, 14 (2d Cir. 2017) (EEOC's production mooted suit for EEOC records); *Perry v. Block*, 684 F.2d 121, 125, 129 (D.C. Cir. 1982) (summary judgment for defendants appropriate because they "had at long last surrendered all of the requested documents"); *Competitive Enterprise Institute v. Office of Science & Technology Policy*, 241 F. Supp.3d 14, 19 (D.D.C. 2017) (ruling on merits that defendant agency was not required to produce duplicates of emails produced in response to request where emails were automatically forwarded to another email address); *Leopold v. Central Intelligence Agency*, 177 F. Supp.3d 479, 490 (D.D.C. 2016) (ruling on the merits that defendant agency did not need to produce duplicates of records it had produced in response to request); *Harvey v. Lynch*,

---

[14] USCIS also cites some cases where the requested records did not exist and thus were not being "withheld."   (USCIS Mem. at 7-10, citing *Haji v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 03-CV-8479, 2004 WL 1783625, *3 (S.D.N.Y. Aug. 10, 2004); *Mitchell v. Kemp*, No. 91-CV-2983, 1992 WL 188355, *4 (S.D.N.Y. July 27, 1992); *Triestman v. United States Department Of Justice, Drug Enforcement Administration*, 878 F. Supp.667, 672-3 (S.D.N.Y. 1995).   Those cases are plainly inapplicable and do not warrant discussion.

[15] "USCIS Mem." refers to USCIS's "Memorandum Of Law In Support Of [Its] Motion To Dismiss For Lack Of Subject Matter Jurisdiction" (Dkt. 30).

123 F. Supp.3d 3, 5 (D.D.C. 2015) (case moot because "Defendants processed the request and produced responsive records"); *Jett v. Federal Bureau of Investigation*, 139 F. Supp.3d 352, 358, 364-65 (D.D.C. 2015) (ruling on the merits that FBI was not required to produce records that were exact duplicates of records it had already produced in response to the request); *Muset v. Ishimaru*, 783 F. Supp.2d 360, 372 (E.D.N.Y. 2011) (claim against the IRS moot after "the documents that were the subject of the FOIA request were produced by the IRS"); *Kroposki v. Federal Aviation Administration*, No. 08-CV-1519, 2010 WL 11565869, at *4 (D. Conn. June 1, 2010) (claim moot because defendant FAA had produced the requested records).

In those cases, not only was the defendant agency the same agency to produce the records, but also it produced them in response to the very request at issue in the litigation.[16]  It is logical that a defendant agency's production of the requested records, in response to the very request at issue in the litigation, moots a case that has been filed against the same agency for failure to comply with the request.  In disclosing the records, the defendant agency would have conducted a search that located records, conceded

---

[16] Even where an agency has produced records, if a requestor sends another request for the same records at a later date, the agency may be required to produce the same records again.  *See Sikes v. United States Department Of The Navy*, 896 F.3d 1227, 1234, 1236 & n.6 (11th Cir. 2018) ("as the [agency] must concede, none of the enumerated [FOIA] exemptions has anything to do with the situation where a person makes a second request for materials he has already received" and a "claim is not moot simply because the [agency] satisfied [a previous request]" for the "same materials" because the new request "is an independent request").  USCIS argues that *Sikes* supports its position because the court noted that "the circumstances might be different where an agency finds multiple copies of the same document within the materials responsive to a FOIA request (or batch of simultaneous requests)."  (USCIS Reply at 6 n.2 (citing *Sikes*, 896 F.3d at 1234 n.3).) USCIS characterizes the separate requests to DOS and USCIS as the type of "batch of simultaneous requests" that *Sikes* was referring to.  (USCIS Reply at 6 n.2.)  But the hypothetical in the dicta of *Sikes* clearly refers to a batch of simultaneous requests to the same agency, not different agencies.  *Sikes*, 896 F.3d at 1234 n.3.

that the requested documents were "agency records" within the meaning of FOIA, and disclosed those records.  In short, it would have complied with all of its requirements under FOIA.  *See New York Times*, 390 F. Supp.3d at 511.

Disclosure by another agency, especially outside of litigation, does not resolve either of the first two issues – whether the agency to which the request was directed conducted an adequate search and whether the requested records were "agency records." *See, e.g.*, *Looney*, 98 F. Supp.2d at 3 (refusing to dismiss case as moot where all records located as responsive were produced, because courts always have jurisdiction to "determine the adequacy of search"); *Cause Of Action Institute v. Internal Revenue Service*, 390 F. Supp.3d 84, 95-96 (D.D.C. 2019) (Brown Jackson, J.) (court has jurisdiction to determine whether requested records are "agency records" within the meaning of FOIA).

Furthermore, where a defendant agency discloses records, but with some redactions or withholdings, the court may retain jurisdiction to determine if those redactions or withholdings comply with FOIA.  *See Northwestern University*, 403 F. Supp.2d at 86.  Here, USCIS argues that DOS's redactions are appropriate and all non-exempt materials have been released.  IRAP disagrees, but USCIS seeks to deprive this Court of jurisdiction to review the propriety of the redactions.  Forcing IRAP to file a new lawsuit to challenge DOS redactions would create a further delay, and "delay in complying with FOIA requests may be tantamount to denial." *American Civil Liberties Union*, 339 F. Supp.2d at 504 (internal quotation marks omitted).  For all of those reasons, the first category of cases cited by USCIS are unpersuasive on the issue before the Court and fail to help USCIS meet its heavy burden to demonstrate that this case is moot.

ii.     **Separate Lawsuits, *Stare Decisis*, And The First-Filed Rule**

USCIS also relies on two cases where the plaintiff filed two different lawsuits against two agencies for the same records.  (USCIS Reply at 4 (citing *Boyd v. Executive Office For United States Attorneys*, 87 F. Supp.3d 58, 87-89 (D.D.C. 2015); *UtahAmerican Energy, Inc. v. Department Of Labor*, 685 F.3d 1118, 1123-25 (D.C. Cir. 2012)).)  In *Boyd*, the plaintiff sought records that the D.C. Circuit had already affirmed were exempt under FOIA in a previous suit.  87 F. Supp.3d at 67, 74-78, 87-89.  After determining that there was no material change of circumstances indicating that more responsive records might exist, the court agreed with the D.C. Circuit's prior holding – on the merits – that the requested records were exempt from FOIA.  *Id.* at 87-89.

In *UtahAmerican*, the D.C. Circuit reversed the district court's holding that the defendant agency was required to produce documents that were the subject of a pending, earlier-filed case against a different agency.  685 F.3d at 1120, 1123-25.  The court's decision was not based on disclosure by the other agency (litigation over whether certain withholdings were appropriate was ongoing), but based on the "first-in-time" or "first-filed" rule, which dictates that, where there are two competing lawsuits addressing the same subject matter, the first suit should have priority, absent certain exceptions.  *Id.* at 1124; *Employers Insurance Of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 274 (2d Cir. 2008).

None of the relevant claims in *Boyd* or *UtahAmerican* were found moot.  Instead, those cases involved considerations not applicable here, such as *stare decisis*, conservation of judicial resources, and the possibility of inconsistent verdicts.  *Boyd*, 87 F. Supp.3d at 78 ("The Court is therefore bound by the D.C. Circuit's finding");

*UtahAmerican*, 685 F.3d at 1124 (cataloguing considerations militating against separate litigation of identical issues); *see also Employers Insurance*, 522 F. 3d at 274 (same).  All of those considerations came into play because the plaintiffs had filed more than one lawsuit for the same records.  IRAP has not done that here – it has not sued DOS over the records or withholdings – and thus none of the dispositive considerations in *Boyd* or *UtahAmerican* are present.  Accordingly, the second category of cases cited by USCIS are unpersuasive on the issue before the Court and do not help USCIS.

### iii.   *Crooker* And Proper Referrals

USCIS relies heavily on *Crooker v. United States Department Of State*, 628 F.2d 9 (D.C. Cir. 1980) (per curiam).  (USCIS Mem. at 9-11; USCIS Reply at 3-6.)  USCIS's reliance on that case, however, is misplaced.  USCIS cherry-picks quotes from *Crooker* and attempts to characterize it as directly on point with this case.  (*See, e.g.*, USCIS Mem. at 10 and USCIS Reply at 4 ("'The Freedom of Information Act does not require that the agency from which documents are requested must release copies of those documents when another agency possessing the same material has already done so'" (quoting *Crooker*, 628 F.2d at 10)).)   The facts of *Crooker*, however, demonstrate that the defendant agency's course of conduct was entirely distinct from USCIS's conduct here in ways that highlight why USCIS's alleged conduct violates FOIA and this case is not moot.

In *Crooker*, the plaintiff filed a FOIA request with the State Department seeking "a copy of all files indexed under his name."  628 F.2d at 10.  The State Department located nineteen responsive records, thirteen of which originated with the FBI.  *Id.*  The State Department forwarded those thirteen documents to the FBI for review and direct response to the requestor.  *Id.*  Responding directly to the request to the State Department, and thus on the State Department's behalf, the FBI disclosed all thirteen documents to the

32

requestor.  *Id.*  Nevertheless, the requestor subsequently wrote to the State Department, again asking for "the FBI documents indexed under his name."  *Id.*  The State Department responded that the FBI had already released the documents.  *Id.*  The requestor then sued the State Department.  *Id.*  The only records at issue were the thirteen documents already released by the FBI.  *Id.*

The State Department's referral to the agency that originated the documents, the FBI, was consistent with State Department FOIA regulations, such that "the request to the [State] Department [was] in effect a second request to the FBI, which ha[d] already provided appellant with the same documents he request[d] a second time."  *Id.* at 11. Such referral procedures have been held to be consistent with FOIA as long as the referral does not significantly impair the requester's ability to obtain the records or significantly increase the amount of time the requester must wait to obtain the records.  *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).  In such cases, the agency to which the request was sent remains ultimately responsible for fulfilling the request.  *Brennan Center For Justice v. United States Department Of State*, 300 F. Supp.3d 540, 549 (S.D.N.Y. 2018).  Such referrals satisfy an agency's requirements under FOIA the same way that an agency's own disclosure satisfies its responsibilities – it conducts a reasonable search (through referral), the agency identifies all "agency records" (through referral), all non-exempt records are released to the requestor, and the agency to which the request was sent is ultimately responsible for ensuring that all of those obligations are met.

What is not consistent with FOIA, and what does not satisfy an agency's requirements under FOIA, is what USCIS allegedly did here – fail to conduct a reasonable

search, fail to locate its own agency records, and fail to disclose those records. *See Sussman v. United States Marshals Service*, 494 F.3d 1106, 1118 (D.C. Cir. 2007) (while an agency "may acquit itself through a referral," an agency "cannot simply refuse to act on the ground that the documents originated elsewhere" (internal quotation marks omitted)). Rather than refer the request to DOS, as USCIS asserts it was permitted to do pursuant to DHS regulations (USCIS Reply at 12), USCIS simply refused to comply the request.

It is also worth noting that, while the one page, per curium opinion in *Crooker* uses the word "moot" once in the body of the text and once in a footnote, the case is not formally about mootness. The records were disclosed prior to litigation, so the disclosed records actually undercut the plaintiff's standing to file the suit in the first instance; they did not render the case moot after it was filed. The distinction is important because it turns plaintiff's burden of establishing subject matter jurisdiction into a heavy burden on defendant to show that the case has become moot – that is, that "it is impossible for a court to grant any effectual relief whatever." *Mhany*, 819 F.3d at 603; *Davis*, 440 U.S. at 631, 99 S. Ct. at 1383; *Service Employees International*, 567 U.S. at 307, 132 S. Ct. at 2287.

*Crooker* thus does not stand for the proposition that one agency's production of records moots a lawsuit against another agency for the same records and does not support USCIS's position.[17]

---

[17] IRAP also notes that *Crooker* was decided before, and may be in conflict with, *Tax Analysts*. (IRAP Mem. at 9-10.) Because *Crooker* describes a proper referral procedure, where the agency to whom the request was sent is ultimately responsible for making sure that it is fulfilled, the Court does not believe that it conflicts with *Tax Analysts*.

### iv.    *Williams & Connolly*

Finally, USCIS relies on *Williams & Connolly v. Securities And Exchange Commission*, 662 F.3d 1240 (D.C. Cir. 2011).  (USCIS Mem. at 10; USCIS Reply at 4, 6.) *Williams & Connolly* is unpersuasive on the question before the Court for several reasons. Before discussing those reasons, it is helpful to provide a brief overview of the case, which helps to highlight the numerous distinctions between it and the instant matter.

*Williams & Connolly* was a FOIA case but arose out of a criminal prosecution for securities violations.   662 F.3d at 1242-43.   The law firm of Williams & Connolly represented the defendant in the criminal prosecution.   *Id.* at 1242.   During the prosecution, the Department Of Justice disclosed to Williams & Connolly eleven sets of notes pursuant to Rule 16 of the Federal Rules Of Criminal Procedure, which "obligates the government to disclose documents that (1) are material to the defendant's case or (2) will be used at trial."  *Id.* at 1243.

During and after the litigation, Williams & Connolly filed FOIA requests with the SEC for, among other things, all notes taken by SEC staff members related to certain conversations.  *Id.* at 1242-43.  The SEC identified 114 sets of responsive records, eleven of which were the records disclosed to Williams & Connolly pursuant to Rule 16 in the criminal matter.  The SEC, however, refused to release any of the notes, arguing that they were all exempt from disclosure under FOIA exemption 5, which "encompasses evidentiary privileges such as the work-product privilege and the deliberative process privilege."  *Id.* at 1243.

After the criminal prosecution ended – and thus after the DOJ had made all of its disclosures pursuant to Rule 16 – Williams & Connolly filed its lawsuit against the SEC, challenging the SEC's refusal to disclose the requested documents under FOIA.  *Id.*

Williams & Connolly argued that the DOJ's disclosure of the eleven documents waived the work-product and deliberative process privileges, and thus FOIA exemption 5, as to all 114 sets of records.  *Id.*

The D.C. Circuit disagreed.  The court discerned two questions before it: one about the eleven "previously released" sets of documents and one about the remaining 104 unreleased sets of documents.  *Id.*  Only the first question is relevant in the instant case, and the court disposed of it in three sentences.  *Id.* at 1243-44.  Citing *Crooker*, the court stated that "an agency has no obligation to release documents to a requester when another agency has already given the same requester the same documents."  *Id.* at 1243.  The court thus held that "the controversy is moot with respect to those documents."  *Id.* at 1244.  The remainder – and the vast majority of the court's discussion – is then spent on the waiver issue.  *Id.* at 1244-46.

The first reason that *Williams & Connolly* is not persuasive on the issues before this Court is because, in *Williams & Connolly*, unlike here, the non-defendant agency released the relevant records before the FOIA lawsuit was filed.  *Id.* at 1243.  Despite the D.C. Circuit's use of the word "moot," like in *Crooker*, the question before the court with respect to the eleven "previously released" sets of records was thus one of standing, not mootness.  *See Arizonans For Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055, 1069 n.22 (1997); *United States Parole Commission v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 1209 (1980).  Again, the distinction is important because of the shift of burden from plaintiff, to demonstrate standing, to a heavy burden on defendant, to demonstrate mootness.  *Mhany*, 819 F.3d at 603, *Davis*, 440 U.S. at 631, 99 S. Ct. at 1383; *Service Employees International*, 567 U.S. at 307, 132 S. Ct. at 2287.

Additionally, although the *Williams & Connolly* court cited *Crooker* for the proposition that "an agency has no obligation to release documents to a requester when another agency has already given the same requester the same documents," the court did not address the clear distinctions in *Crooker* – primarily that *Crooker* involved a proper referral to another agency.  662 F.3d at 1243.  The court thus did not explain how one agency's disclosure of records necessarily would moot a lawsuit against another agency outside of the referral context, let alone how it would extend to a case such as this one, where the defendant agency allegedly violated its duties under FOIA and the non-defendant agency did not release the records until after the plaintiff had sued.  For those reasons, *Williams & Connolly* is not persuasive on the issues before the Court and does not help USCIS meet its heavy burden of demonstrating that this case is moot.

### d.    Policy Considerations And Conclusion

The novel rule of mootness that USCIS seeks here would have negative consequences that run counter to the purposes of FOIA.  It would discourage requestors from seeking records from multiple agencies when the requestor is unsure which agency may possess the responsive records.  An agency would be relieved of its duty to respond to a request simply because another agency processed a similar request, regardless of what that other agency disclosed (if anything) in response to the request.  (USCIS Reply at 3-7, 15.)  The defendant agency would not ultimately be responsible for ensuring that all non-exempt records were disclosed, as agencies are when they properly refer a request.  *Brennan Center*, 300 F. Supp.3d at 549 (agency that receives request "is ultimately responsible" after making formal referral).  Judicial review of any withholdings or redactions could be unreasonably delayed because the requestor would need to file a new case to challenge the non-defendant agency's search, withholdings, and redactions.

And defendant agencies could evade judicial review, even where their refusal to search for and disclose non-exempt records clearly violates FOIA.

Here, in particular, USCIS would have IRAP return to the administrative process, appeal DOS's decision, exhaust administrative remedies, file a new lawsuit, brief a new motion for summary judgment, and wait for a decision before receiving what it is entitled to – "having a court determine whether the search for records was adequate." *Brustein & Manasevit*, 30 F. Supp. 3d at 5 (internal quotation marks omitted).  That is an untenable position under FOIA, where "delay in complying with [ ] requests may be tantamount to denial." *American Civil Liberties Union*, 339 F. Supp.2d at 504 (internal quotation marks omitted).

Such a rule of mootness is not dictated by any of the cases cited by USCIS, is not permitted by the exclusive exemptions to FOIA, and would be contrary to the principles underlying FOIA.  For all of the reasons explained above, this Court declines to find that IRAP's action against USCIS is rendered moot by DOS's post-lawsuit disclosure of materials.[18]

---

[18] In its reply brief, USCIS newly states that DOS consulted with USCIS before releasing records that originated with USCIS and, because the remainder of the requested WRAPS records "originated with DOS," if it were required to further process IRAP's FOIA request, it would refer the remainder of the request to DOS for processing pursuant to DHS's FOIA regulations.  (USCIS Reply at 6.)  As noted, a proper referral does not violate FOIA, but what USCIS has allegedly done here does.  *Sussman*, 494 F.3d at 1118 (D.C. Cir. 2007).  The question is not presently before the Court, but if USCIS attempted to refer the request now, this long after it was received and after litigation is pending, the Court doubts whether such a referral would pass muster under *McGehee*, 697 F.2d at 1110 (referral may not unreasonably delay disclosure).  IRAP represents that it would be willing to allow USCIS to adopt DOS's redactions and withholdings so that they could be challenged in this litigation.  (Plaintiff's Reply In Further Support Of Its Motion For Partial Summary Judgment (Dkt. 53) at 7 n.4.)  That may be a reasonable approach should the parties choose to pursue it.

## 2.    DOS's Withholdings / Redactions[19]

IRAP argues that, even if DOS's disclosures were relevant to determining mootness as to IRAP's claims against USCIS, the case would not be moot because DOS has withheld or redacted a considerable portion of the requested records. IRAP thus has not received everything it requested and has a live controversy about the records that have been withheld in full or in part. (IRAP Mem. at 10-11.[20]) IRAP is correct.

USCIS counters that, because DOS is not a defendant in this case, IRAP cannot challenge DOS withholdings here. (USCIS Reply at 6-7.) But this lawsuit does not challenge DOS's withholdings; rather, it challenges USCIS's withholdings, which happen to include everything. It is particularly disingenuous for USCIS to contend that DOS's disclosure relieves USCIS of its obligations, even though DOS has provided only some of what IRAP requested. USCIS argues that allowing IRAP to challenge DOS's withholdings and redactions could lead to duplicative litigation and inconsistent verdicts. (USCIS Reply at 7.) As discussed above, however, that concern is fully mitigated by the first-filed rule, which would allow only one suit to go forward. *UtahAmerican*, 685 F.3d at 1124; *see also Employers Insurance*, 522 F.3d at 274.

In short, IRAP requested records from USCIS; USCIS provided none; so IRAP sued USCIS for improperly withholding agency records. USCIS points to DOS's

---

[19] Although the parties dispute whether certain records were "withheld in full" or extensively redacted (USCIS 56.1 ¶ 97), the distinction is not material. A redacted record is a partially withheld record; or, put another way, a fully withheld portion of a record. *See Judicial Watch, Inc. v. Food & Drug Administration*, 449 F.3d 141, 145 (D.C. Cir. 2006). Each gives the Court equal power to review the withholding and order the disclosure of improperly withheld agency records. *See id.*; 5 U.S.C. § 552(a)(4)(B).

[20] "IRAP Mem." refers to IRAP's "Combined Memorandum Of Law In Support Of Its Motion For Partial Summary Judgment And In Opposition To Defendant's Motion To Dismiss Under Rule 12(b)(1)" (Dkt. 41).

production of records in response to a separate request.  DOS did not produce all the records requested by IRAP from USCIS.  There thus remain undisclosed records responsive to IRAP's FOIA request to USCIS.  Accordingly, there is a live controversy for which the Court can grant relief, and the case is not moot.

### 3.    USCIS Has Adequately Pleaded A Policy-Or-Practice Claim

There is yet another reason why this case is not moot. IRAP has adequately pleaded that USCIS has a policy or practice of violating FOIA.  The Court will explain why that is so and then address USCIS's counter-arguments.

### a.    USCIS's Policy-Or-Practice Claim

Even where a defendant agency produces all records responsive to a particular request, a FOIA lawsuit will not be moot where the plaintiff has adequately alleged that the defendant agency has a policy or practice of violating FOIA.  *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("even though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future"); *Newport Aeronautical Sales v. Department Of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (following *Payne Enterprises* and noting that "even though a party may have obtained relief as to a specific request under [ ] FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future" (internal quotation marks omitted)); *Judicial Watch, Inc. v. United States Department Of Homeland Security*, 895 F.3d 770, 778 (D.C. Cir. 2018) (relying on *Payne Enterprises* and *Newport Aeronautical* to find that case was not moot because plaintiff had alleged policy-or-practice claim); *Muttitt v. United States Central Command*, 813 F.Supp.2d 221, 229 (D.D.C. 2011) ("where a plaintiff challenges an alleged pattern and practice of

40

violating procedural requirements of FOIA in connection with the processing of the plaintiff's FOIA requests[,] the Court has the power under FOIA and *Payne* [*Enterprises*] to provide the requested declaratory and injunctive remedies").

"The Second Circuit has not yet recognized the existence of such an independent pattern or practice claim under FOIA," but courts in this circuit have entertained such claims. *Panjiva, Inc. v. United States Customs & Border Protection*, 342 F. Supp.3d 481, 495-96 (S.D.N.Y. 2018), *aff'd*, 975 F.3d 171 (2d Cir. 2020). Indeed, USCIS does not challenge the propriety of such claims, but instead argues that IRAP has not and cannot adequately allege one.  (USCIS Reply at 8-11.)  The Court does not agree.

The standard for a FOIA policy-or-practice claim was articulated in *National Security Counselors*:

> To state a claim for relief under the doctrine articulated in *Payne*, a plaintiff must plausibly demonstrate that: (1) the agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA; and (2) the plaintiff will suffer continuing injury due to this practice.

898 F. Supp.2d at 253 (internal quotation marks omitted).

The first line of IRAP's complaint reads, "This case challenges **the policy** of Defendant [USCIS] of claiming, for purposes of the Freedom of Information Act [FOIA], that it has no records of the refugee resettlement applications that it adjudicates." (Compl. ¶ 1 (emphasis added).)  The second sentence begins, "USCIS's **policy** is unlawful under FOIA."  (Compl. ¶ 1 (emphasis added).)   The complaint goes on to describe IRAP's advocacy on behalf of its clients, including "routinely" filing FOIA request in connection with its direct advocacy for people seeking refugee resettlement, to which USCIS "routinely" fails to produce any documents and refuses to search WRAPS.  (Compl. ¶¶ 1-

2, 4-5, 10, 37, 40, 42, 45, 52-53, 61-62.)   The second to last line of the complaint's statement of facts alleges that "USCIS does not, *as a matter of policy*, search WRAPS in response to FOIA requests directed to USCIS."  (Compl. ¶ 62 (emphasis added).)

In that context, IRAP describes the details of USCIS's denial of its requests for records related to J.D.'s refugee resettlement application.  (Compl. ¶¶ 37-49.)   IRAP references three separate replies from USCIS, all of which stated that no records had been located, and all of which failed to indicate that USCIS had searched WRAPS. (Compl. ¶¶ 37-49.)  The three different responses from USCIS had three different control numbers, all of which IRAP included in its complaint.  (Compl. ¶¶ 37-49.)

IRAP further alleges that USCIS's policies for refusing to search WRAPS and produce records about the refugee resettlement cases it adjudicates taxes IRAP's resources and blocks a key pathway for it to advocate on behalf of its clients.  (Compl. ¶¶ 1-5, 30-31, 37-53, 61-62.)  Outside of USCIS's ongoing failure to respond to the current request, IRAP does not squarely state that it will continue to suffer those injuries.  That conclusion, however, is a reasonable inference from IRAP's ongoing advocacy on behalf of its clients and USCIS's alleged policy.  *Morrison*, 547 F.3d at 170 (in deciding a Rule 12(b)(1) motion to dismiss, the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" (internal quotation marks omitted)). IRAP has submitted declarations in support of all of the relevant allegations, which include statements directly addressing the ongoing injury.  (Poellot Decl. ¶¶ 8-12.)

IRAP has thus adequately alleged that USCIS has a policy or practice of violating FOIA.  *See Payne Enterprises*, 837 F.2d at 491 (reversing dismissal because plaintiff alleged that informal practice leading to unreasonable delays in disclosure would cause

it continuing injury); *Newport Aeronautical*, 684 F.3d at 164 (reversing dismissal because plaintiff demonstrated that practice of denying certain FOIA requests and forcing plaintiff to seek records under more restrictive disclosure statute would cause plaintiff continuing injury).

### b.    USCIS's Counter-Arguments

USCIS argues that IRAP's complaint "asserts a single cause of action seeking production of the documents requested under FOIA."  (USCIS Mem. 8-9.)  In support of that argument, it points to the three-paragraph section of the complaint titled "Prayer For Relief," calls it the "sole claim for relief," notes that those paragraphs are focused on obtaining "the specific records sought in the request," and argues that "[t]he complaint asserts no other cause of action."  (USCIS Mem. at 8-9.)

USCIS appears to be conflating the terms "cause of action" and "claim for relief." A "cause of action" is "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Cause Of Action*, Black's Law Dictionary (10th ed. 2014).  By contrast, the "claim for relief" section of a complaint is merely "the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim For Relief*, Black's Law Dictionary (10th ed. 2014).  There is nothing inconsistent about pleading a group of operative facts, or "cause of action," that demonstrates a policy or practice of violating FOIA and requesting, as relief, specific records improperly withheld as a result of that policy or practice.  USCIS cites no case to support a proposition that, to adequately plead a policy-or-practice claim, the plaintiff must include a request for relief related to the policy itself.

Next, USCIS argues that the five-paragraph section of the complaint titled "Prayer For Relief" does not "include a request for declaratory relief in connection with the

agency's policies or practices."  (USCIS Mem. at 9.)  A "Prayer For Relief" is simply "[a] request addressed to the court and appearing at the end of a pleading; esp., a request for specific relief of damages."  *Prayer For Relief*, Black's Law Dictionary (10th ed. 2014). Again, USCIS cites no case for the proposition that, to adequately allege a policy-or-practice cause of action, the "Prayer For Relief" must include a request to the court related directly to the policy or practice, and the Court has not found any.  Even so, IRAP's Prayer for Relief does request a declaration that "Defendant violated the FOIA by unlawfully withholding the requested records."  (Compl., Prayer For Relief, ¶ 1.)  As noted, IRAP's complaint argues that USCIS's withholding of J.D.'s records was part of a policy of refusing to search WRAPS and claiming that it has "no records" of the refugee applications it adjudicates.  In context, it is thus a reasonable inference that a declaration that USCIS "violated the FOIA by unlawfully withholding the records," does "include a request for declaratory relief in connection with the agency's policies or practices." (Compl., Prayer For Relief, ¶ 1; USCIS Mem. at 9.)

Still, USCIS further argues that it "cannot be expected to respond to an entirely separate and distinct claim for declaratory relief that is not asserted as a cause of action or as part of the complaint's prayer for relief," suggesting that it was not given fair notice that IRAP challenged its policy under Rule 8 of the Federal Rules Of Civil Procedure. (USCIS Reply at 9.)  It is unclear what USCIS means by "asserted as a cause of action" in that context.  Putting that aside, the argument that USCIS was not given fair notice that IRAP was challenging its alleged policy is risible.

As noted, the first line of IRAP's complaint reads, "This case challenges *the policy* of Defendant [USCIS] of claiming, for purposes of the Freedom of Information Act [FOIA],

that it has no records of the refugee resettlement applications that it adjudicates;" the second sentences begins, "USCIS's **policy** is unlawful under FOIA"; the complaint goes on to describe IRAP's advocacy on behalf of its clients, including "routinely" filing FOIA request, in response to which USCIS "routinely" fails to produce any documents or search WRAPS; and the second to last line of the complaint's statement of facts alleges that "USCIS does not, **as a matter of policy**, search WRAPS in response to FOIA requests directed to USCIS." (Compl. ¶ 1, 2, 10, 62 (emphases added).)   The complaint's allegations specifically illustrate that policy through the example of USCIS's multiple "no response" replies to IRAP's requests for J.D.'s records.

USCIS also argues that IRAP's complaint does not adequately allege a policy-or-practice claim because it does not contain sufficiently specific allegations about prior violations of FOIA for similar reasons.  It argues that, to state a policy-or-practice claim, a complaint must list specific control numbers for prior requests that were denied on the same grounds.  (USCIS Reply 10-11.)  For that proposition, USCIS cites two cases, *Muttitt*, 813 F. Supp.2d at 230, and *Scudder v. Central Intelligence Agency*, 281 F. Supp.3d 124, 128-20 (D.D.C. 2017).

The cases cited by USCIS do not support a requirement for the level of specificity demanded by USCIS; other more persuasive cases include no such requirement; and even if such specificity were required, IRAP has satisfied the level of specificity USCIS demands.

In *Muttitt*, the court mentioned that the plaintiff had provided control numbers for five separate FOIA requests but did not say that doing so was required.  813 F. Supp.2d at 230. The D.C. Circuit set forth no such requirement in *Payne Enterprises*, the case

establishing the policy or practice claim, or any successor cases, and the Court is not aware of any case imposing such a requirement.

Even if identification of previous particular cases by control number were required, IRAP satisfies the requirement. With respect to IRAP's requests for J.D.'s records alone, the complaint cites to three separate letters from USCIS, with three different control numbers, all of which IRAP alleges demonstrate USCIS's policies of violating FOIA by refusing to search WRAPS and failing to disclosure any records about the cases it adjudicates. (Compl. ¶¶ 37-49.) In *Muttit*, the plaintiff cited five control numbers. 813 F. Supp.2d at 230. Here, Plaintiff cites three. Although all three are requests made in connection with the same files, they nevertheless represent a repeated practice. Furthermore, the declarations submitted by IRAP state that IRAP has received 20 "no records" responses since 2017.[21] (Poellot Decl. ¶ 8.) USCIS argues that the allegation in the declaration is not specific enough. (USCIS Reply at 11.) But again, the Court is not aware of any authority requiring specific identification of the individual cases.

*Scudder*, the other case cited by USCIS for the proposition that IRAP's pleading must document prior violations for similar reasons, is no greater help to USCIS. In *Scudder*, the court noted that the plaintiff failed to allege even a single specific instance where the defendant agency had "allegedly violated FOIA" in the same manner that plaintiff alleged it had violated FOIA in response to its request. 281 F. Supp.3d at 129.

---

[21] USCIS asks this Court to disregard the declarations submitted by IRAP. (USCIS Reply at 11.) The Court need not do that. *J.S.*, 386 F.3d at 110 (the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue"); *Makarova* , 201 F.3d at 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings").

As noted, IRAP has alleged at least 20 instances of alleged FOIA violations on similar grounds, while identifying the three most apt ones – those pertaining to J.D. – with their control numbers.

Based on its assumption that IRAP had not adequately alleged a policy-or-practice claim – and responding to IRAP's request to amend its complaint if the Court found that it had not – USCIS also argues that IRAP cannot plausibly allege a policy-or-practice claim.  (USCIS Reply at 11-14.)  USICS makes two arguments in support of that position. Both are unavailing.

First, USCIS argues that IRAP cannot plausibly allege "any agency pattern or practice to deny IRAP access to WRAPS records" because DOS produced records from WRAPS.  (USCIS Reply at 12.)  That argument succumbs to the same flaws as USCIS's arguments that production of WRAPS records by a different agency moots the case.  The case at hand is about USCIS's conduct and practices, not those of DOS.

USCIS also refers to its authority to refer requests to other agencies.  (USCIS Reply at 12.)  But USCIS did not make any such referral.  As the Court explained above, proper referrals do not violate FOIA; USCIS's alleged policy or practice of failing to conduct an adequate search and improperly withholding documents does. *Sussman*, 494 F.3d 1106, 1118; *Payne Enterprises*, 837 F.2d at 491.

Second, USCIS argues that IRAP cannot allege future harm, as required for a policy-or-practice claim, because DOS is in the process of decommissioning WRAPS and "expects" to finish by late 2021.  (USCIS Reply at 13.)  USCIS cites no case to support its proposition that the "expectation" of changing systems by such an amorphous deadline as "late 2021" can establish that a plaintiff cannot demonstrate future harm, and the Court

is unaware of any.  To the contrary, USCIS's argument is effectively that IRAP's policy-or-practice claim is moot because of a planned future event.  Plenty of cases have rejected that theory in other contexts, even when the defendant promises to cease the challenge behavior, rather than just assert that the circumstances giving rise to the violation are expected to cease to exist, as USCIS does here.  *See, e.g.*, *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997) (state's promise to provide plaintiff with wheelchair sought through litigation did not moot case because "[i]f some impediment arises or some prolonged delay ensues … [plaintiff] would be at square one"); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 545 (E.D.N.Y. 2017) (defendant's consent decree with the FTC to include on its labeling only claims that it could substantiate with competent, reliable evidence did not moot claim for similar injunctive relief because the "third-party agreement" did not assure that no violation would recur); *Gropper v. Fine Arts Housing, Inc.*, 12 F.Supp.3d 664, 670 (S.D.N.Y. 2014) (restaurant's promises to retrofit premises pursuant to a voluntary consent agreement did not moot plaintiff's claims because the agreement "consist[ed] largely of promises that [the restaurant would] fulfill *in the future*") (emphasis in original)).

Even if the Court were limited to considering whether IRAP may suffer a future injury before "late 2021," IRAP could easily allege that it will.  In fact, a reasonable inference from IRAP's current allegations is that it will.  IRAP routinely files FOIA requests on behalf of its clients who are attempting to avail themselves of discretionary review of USCIS's rejection of their refugee resettlement applications.  (*See* Compl. ¶ 10.)  A reasonable inference can be made that IRAP will file a FOIA request with USCIS before late 2021, and that USCIS will issue a "no records" response, before then.  *See* 5 U.S.C.

48

§ 552(a)(3)(A), (a)(6)(A)(i) (agency is required to determine whether it will reply within 20 days and produce responsive records promptly).

For all of the reasons explained above, IRAP has adequately alleged a policy-or-practice claim that further forecloses USCIS's argument that this case is moot.

## C.    IRAP's Motion For Partial Summary Judgment

### 1.    Legal Standard

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2509-10 (1986). The Court's task is not to resolve contested issues of fact but rather to determine whether there exists any disputed issue of material fact.  *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir. 1987); *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir. 1986).  "A fact is material when it might affect the outcome of the suit under governing law."  *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 421 F. App'x 97, 101 (2d Cir. 2011) (summary order) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).  A dispute "is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

"The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'"  *Federal Deposit Insurance Corp. v. Great American Insurance Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553).  Once this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.*

(citing *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"'All evidence submitted on the motion is to be construed in the manner most favorable to the nonmoving party.'"  *Okin v. Village of Cornwall-On-Hudson Police Department*, 577 F.3d 415, 427 (2d Cir. 2009) (quoting *Horvath v. Westport Library Association*, 362 F.3d 147, 151 (2d Cir. 2004)).  However, "[t]o defeat a summary judgment motion, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'"  *Great American Insurance Co.*, 607 F.3d at 292 (first quoting *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986), then quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248, 106 S. Ct. 2510; *see also Knight*, 804 F.2d at 11-12 ("[T]he mere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment") (quoting *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curium)).

### 2.    Application

IRAP moves for partial summary judgement on the issue of whether USCIS conducted an adequate search.  (IRAP Mem. at 13.)  This case is unusual for a FOIA

case in that USCIS has not cross moved for summary judgment.  *See, e.g.*, *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 476 (2d Cir. 1999); *Carney v. United States Department Of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *Seife v. United States Department Of State*, 298 F. Supp. 3d 592, 604 (S.D.N.Y. 2018).

Typically, an agency would cross-move for summary judgment, and it would bear the burden of demonstrating that it conducted an adequate search.  *See, e.g.*, *Carney*,19 F.3d at 812; *NAACP Legal Defense And Education Fund*, 463 F. Supp.3d at 483; *Garcia v. United States Department Of Justice, Office Of Information And Privacy*, 181 F. Supp.2d 356, 365 (S.D.N.Y. 2002).  An adequate search is one that is "reasonably calculated to discover the requested documents."  *Grand Central Partnership*, 166 F.3d at 489 (2d Cir. 1999) (internal quotation marks omitted).  An agency can typically make that showing through affidavits.  *See, e.g.*, *Carney*,19 F.3d at 812; *NAACP Legal Defense And Education Fund*, 463 F. Supp.3d at 483; *Garcia*, 181 F. Supp.2d at 365.

Here, USCIS has submitted an affidavit describing the search that it conducted. (White Decl.)  However, in its opposition to IRAP's motion for summary judgment, it does not focus on that affidavit or arguments that it conducted an adequate search.  (USCIS Reply at 16-21.)  Instead, it once again seeks to divest this Court of jurisdiction, arguing that the requested records are not USCIS agency records, and thus the Court has no power to grant IRAP any relief.  (USCIS Reply at 17.)  USCIS's argument that the requested records are not USCIS agency records fails, and the undisputed evidence establishes that USCIS failed to conduct an adequate search.  The Court will address each issue in turn.

### a.    USCIS Agency Records In WRAPS

For a court to have jurisdiction to require an agency to comply with FOIA or devise remedies, the requested records must be (1) improperly (2) withheld (3) agency records. *Tax Analysts*, 492 U.S. at 142, 109 S. Ct. at 2846.   Here, USCIS contends that the requested records are not USCIS "agency records."   (USCIS Reply at 17-21.)   For purposes of the summary judgment motion, USCIS does not contest either of the other two factors.  (*See* USCIS Reply at 17-21.)

A record is an "agency record" when two criteria are met: (1) an agency must "create or obtain" the record; and (2) "the agency must be in control of the requested materials at the time the FOIA request is made."  *Tax Analysts*, 492 U.S. at 144-45, 109 S. Ct. at 2848.   "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records.'"  *Tax Analysts*, 492 U.S. at 142 n.3, 109 S. Ct. at 2846 n.3.  USCIS has not met that burden.  To the contrary, USCIS concedes that some of the requested records are USCIS agency records.

USCIS does not contest that two types of records are USCIS records: (1) records that USCIS creates; and (2) records generated on USCIS forms.  (USCIS Reply at 18 n.6.)  The records requested by IRAP in this case were "[a]ll documents and information pertaining to [J.D.'s] application … for USRAP refugee resettlement as contained in the records of the Refugee Processing Center, including the full [WRAPS] database file."[22]

---

[22] In its motion for summary judgment, IRAP characterized that information as the "refugee case file."  (IRAP Mem. at 16.)  IRAP explains that a refugee case file contains two types of information: (1) records that USCIS requires to reach decisions on refugee cases, such as applications and supporting documents submitted according to USCIS procedures on USCIS forms, biometric information and security check results, and any correspondence pertaining to the applicant; and (2) materials generated by USCIS officers in the course of reaching decisions.  (IRAP Mem. at 16.)

(USCIS 56.1 ¶ 73.)  It is undisputed that USCIS requires any person seeking to resettle in the United States to submit an application using a USCIS Form I-590, which is a record generated on USCIS forms, and those records are stored in WRAPS.  (USCIS 56.1 ¶ 6, 50.)  In arguing that this case is moot, USCIS also conceded that there were "records in WRAPS concerning J.D. that originated with USCIS," about which DOS consulted with USCIS.  (USCIS Reply at 5.)  That is consistent with DOS's original response to IRAP's FOIA request, informing IRAP that "some or all of the records you seek appear to have been originated by [USCIS]."  (Stein Decl., Ex. B, at 2.)  There are thus at least some records in WRAPS that meet USCIS's own limited definition of USCIS agency records.  Accordingly, USCIS has not met its burden of demonstrating that records requested by IRAP are not USCIS agency records.

After conceding that some of the records sought by IRAP are USCIS agency records, USCIS attempts to move the goalposts on what is required for this Court to have jurisdiction over this case.  USCIS argues that not "all" records in WRAPS are USCIS agency records.  (USCIS Reply at 17 (not "all records in WRAPS" are created or obtained by WRAPS under the first prong of *Tax Analysts*), 19 ("not all of the records in WRAPS" were controlled by USCIS under the second prong of *Tax Analysts*).)[23]

USCIS cites no case for the proposition that, for a court to have jurisdiction over a FOIA case, all of the requested records must be agency records, and the Court is not aware of any.  After all, it would be directly contrary to FOIA's purposes of encouraging

---

[23] Given that USCIS concedes that some of the requested records were USCIS agency records, meeting both the criteria of *Tax Analysts*, there is no need for the Court to engage in a protracted analysis of how those records are USCIS agency records under *Tax Analysts*.

broad disclosure and an informed citizenry to hold that, when someone requests some records that are agency records and some that are not, the agency is not required to search for any records.  *See Michael's Piano*, 18 F.3d 138, 143 (2d Cir.1994).  USCIS thus fails to satisfy its burden of demonstrating that IRAP has not requested USCIS agency records and that the Court thus has no power to force USCIS to comply with FOIA.

### b.  USCIS's Inadequate Search

When an agency receives a FOIA request it is required to conduct an adequate search, which is one that is "reasonably calculated to discover the requested documents." *Grand Central Partnership*, 166 F.3d at 489 (internal quotation marks omitted); *New York Times*, 390 F. Supp.3d at 511.  As explained above, it is undisputed that WRAPS contains USCIS records responsive to IRAP's request.  It is also undisputed that USCIS has not searched WRAPS in response to IRAP's request.  (USCIS 56.1 ¶ 94.)  Furthermore, USCIS had every reason to believe that responsive records were located in WRAPS. (*See* USCIS 56.1 ¶ 50 (describing USCIS officers directly approving USCIS Form I-590 in WRAPS).)  By failing to search WRAPS, USCIS thus failed to conduct an adequate search.  *See, e.g.*, *NAACP Legal Defense & Education Fund*, 463 F. Supp.3d at 488 (failure to search database that agency had "ample reason to believe … was also likely to contain" responsive records constituted an inadequate search.)

IRAP is thus entitled to partial summary judgment on the issue of whether USCIS conducted an adequate search.  Accordingly, the Court:

(1)    Declares that USCIS's failure to search WRAPS violated FOIA;

(2)    Enjoins USCIS from withholding records by refusing to search WRAPS;

(3)     Orders USCIS to complete a reasonable search of WRAPS for all records responsive to the request at issue in this case within 20 days of this order; and

(4)     Orders USCIS to produce all records responsive to the request at issue in this case within 30 days.  To the extent USCIS wishes to withhold any records or portions thereof pursuant to any FOIA exemption, USCIS must explain the basis for the withholdings or redaction in a *Vaughn* index that must accompany the production.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED, and Plaintiff's motion for summary judgment is GRANTED as set forth above.

So ordered,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 22, 2021
        New York, New York

Copies transmitted this date to all counsel of record.

55